DAVID L. NEALE (SBN 141225)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: dln@lnbyb.com; kjm@lnbyb.com

Attorneys for Chapter 11 Debtors and Debtors in Possession

**FILED & ENTERED**

**MAY 11 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** egarcia **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CARTEL MANAGEMENT, INC.<br><br>Debtor. | Lead Case No. 2:17-bk-11179-DS<br><br>Jointly administered with:<br><br>Case No. 2:17-bk-11181-DS<br>(Titans of Mavericks, LLC) |
| In re:<br><br>TITANS OF MAVERICKS, LLC,<br><br>Debtor.<br><br>☒ Affects Both Debtors<br><br>☐ Affects Cartel Management, Inc. only<br><br>☐ Affects Titans of Mavericks, LLC only | Chapter 11<br><br>**ORDER: (1) APPROVING AUCTION SALE FORMAT AND BIDDING PROCEDURES; (2) APPROVING FORM OF NOTICE TO BE PROVIDED TO PROSPECTIVE BUYERS; (3) APPROVING FORM OF ASSET PURCHASE AGREEMENT FOR PROSPECTIVE OVERBIDDERS TO USE; AND (4) SCHEDULING A HEARING FOR THE COURT TO CONSIDER APPROVAL OF THE DEBTORS' ASSET SALE TO THE HIGHEST AND BEST BIDDER**<br><br>Date:  May 10, 2017<br>Time:  2:00 p.m.<br>Place: Courtroom 1639<br>           255 East Temple Street<br>           Los Angeles, CA 90012 |

On May 10, 2017, the court held a hearing to consider approval of the "Motion For Entry

Of An Order: (1) Approving Auction Sale Format And Bidding Procedures; (2) Approving Form

Of Notice To Be Provided To Prospective Buyers; (3) Approving Form Of Asset Purchase Agreement For Prospective Overbidders To Use; And (4) Scheduling A Hearing For The Court To Consider Approval Of The Debtors' Asset Sale To The Highest And Best Bidder" (the "Motion," Docket No. 77) filed by Cartel Management, Inc. and Titans of Mavericks, LLC, chapter 11 debtors and debtors in possession in the above-referenced, jointly-administered cases (the "Debtors"), pursuant to Local Bankruptcy Rule 6004-1.  Appearances were made at the hearing as set forth on the record of the court.

The court, having considered the Motion, all of the pleadings filed by the Debtors in support of the Motion, any objections to the Motion, and good cause appearing, hereby orders as follows:

1. The Motion is granted.

2. The objections to the Motion, to the extent not otherwise resolved at the hearing on the Motion, are overruled.

3. The Debtors' proposed auction sale format and bidding procedures, as described in the Motion and this Order, are hereby approved.

4. The Debtors' proposed form of notice to be provided to prospective buyers, in the form attached as Exhibit "1" to the Motion, is hereby approved.

5. The Debtors' proposed form of asset purchase agreement for prospective buyers to use, in the form attached as Exhibit "2" to the Motion, as specifically modified herein (the "APA"), is hereby approved.

6. The APA is modified and amended in the following respects:

> Section 4.2(c) of the APA is deleted in its entirety, and replaced by the following:
>
> "The cash balance of the Purchase Price shall be payable at Closing by wire transfer of Good Funds to a segregated debtor-in-possession bank account in the name of CMI at least two (2) business days prior to the Closing Date."
>
> Section 9.7 of the APA is deleted in its entirety, and replaced by the following:

"Governmental Approvals. Assuming that the Bankruptcy Court enters the Sale Order, there shall be no further governmental approvals required as a precondition to Seller's consummation of the transactions contemplated by this Agreement."

Section 10.2 of the APA is deleted in its entirety, and replaced by the following:

"Governmental Approvals. Assuming that the Bankruptcy Court enters the Sale Order, there shall be no further governmental approvals required as a precondition to Purchaser's consummation of the transactions contemplated by this Agreement."

Section 17.15 of the APA is deleted in its entirety, and replaced by the following:

"Escrow Holder Matters. Escrow Holder shall hold all of the funds in the Deposit Account pursuant to the terms of this Agreement, and shall not be entitled to receive any compensation, administrative fee or expense reimbursement for serving as Escrow Holder. Escrow Holder shall only disburse the contents of the Deposit Account at the times and pursuant to the terms and conditions set forth in this Agreement; provided, however, that if there are any disputes and/or conflicting instructions from and/or among the Sellers, Purchaser and/or any other relevant party in interest regarding the disbursement of the funds in the Deposit Account, the Escrow Holder shall either (a) not release any funds in the Deposit Account until such dispute is resolved by the entry of an order of the Bankruptcy Court or otherwise by agreement of the parties, or (b) deposit any funds in the Deposit Account into the registry of the Bankruptcy Court and commence an interpleader action so that the Bankruptcy Court may determine the parties' respective rights, if any, with respect to such funds. Escrow Holder shall not be deemed to have assumed any fiduciary duty to the parties hereto, and shall have no liability to any party for actions taken in substantial compliance with the terms of this Agreement and/or controlling court order."

7.  The Debtors have put together a "data room" which contains customary information about the Debtors' business. The Debtors will share this information with any buyer who executes a confidentiality agreement (which can be obtained from the Debtors) and who demonstrates to the Debtors that the buyer has the reasonable financial ability to participate in an auction sale process within the required time frame (such as by providing verified proof of funds or funding commitments in connection with potential bidders' demonstration of financial ability). To the extent that viable prospective buyers desire to obtain additional financial information from the Debtors beyond the information that the Debtors have compiled, the Debtors will make every

reasonable effort to facilitate providing that additional information to the buyer, and the Debtors will then add that information to the data room to make sure that all prospective buyers have equal access to the same information. Interested parties will be provided contact information for the Debtors' representatives.

8. The auction sale will take place on Thursday, June 1, 2017, commencing at 10:00 a.m., at the law offices of Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB") at 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

9. Substantially all of the Debtors' assets related to "Titans of Mavericks" are available to be purchased, free and clear of claims and interests, pursuant to 11 U.S.C. § 363(f), except for those assets which are designated as "Excluded Assets" in the template asset purchase agreement to be used by prospective bidders (which consist primarily of cash and avoidance causes of action, and may include assets that are unrelated to "Titans of Mavericks").

10. In order to be eligible to participate in the auction sale, a prospective bidder will be required to do the following four things:

 a. no later than May 25, 2017, deliver to the Debtors in writing their opening bid which must be in the minimum initial amount of $1,000,000;

 b. no later than May 25, 2017, deliver a deposit in the amount of $50,000 to LNBYB, which will be held in a segregated account and which will be fully and immediately refundable if the bidder is not the winning bidder (or winning back-up bidder) at the auction, but which will be non-refundable and constitute liquidated damages in favor of the Debtors' bankruptcy estates (equally) if the bidder is deemed to be the winning bidder at the auction sale, has its bid (and the Debtors' corresponding asset sale) approved by the Bankruptcy Court, and fails to close its purchase of the Debtors' assets;

 c. be deemed by the Debtors to be financially qualified to participate in the auction sale; and

 d. deliver to LNBYB, no later than 48 hours prior to the auction, any proposed changes the bidder has to the template asset purchase agreement that the Debtors

have prepared and which can be obtained from the Debtors, and a schedule of contracts and leases proposed to be assumed by the bidder. The deposit of the winning back-up bidder will also be retained in the segregated account until the winning bidder closes its purchase or until the winning back-up bidder closes its purchase or fails to close in the manner described below.

11. The Debtors will determine the highest and best qualified bid to the extent there is more than one qualified bid. That bid will be deemed to be the opening bid at the sale auction and will be assigned bid #1 at the sale auction. To the extent there is more than one qualified bid, any qualified bidders whose bids are not determined by the Debtors to be the highest and best qualified bid will be randomly assigned bidding numbers by the Debtors. For purposes of illustration, assuming there are three qualified bidders who attend the auction sale, the bidder whose bid is deemed by the Debtors to be the opening bid (because it has been determined by the Debtors to be the highest and best bid) is assigned bid #1. The bidding will then proceed to bidder #2. Bidder #2 will then be required to submit a bid which is at least $100,000 higher than the qualified bid submitted by bidder #1 or drop out of the auction sale. The bidding will then turn to bidder #3 and then back to bidder #1 and continue (with bidding increments of at least $100,000) until all bidders but one have dropped out of the auction sale at which point the bidder who made the highest and best bid will be deemed the potential winning bidder. To the extent the final bid amount of the potential winning bidder is acceptable to the Debtors, in their sole discretion, as the winning bid, that potential winning bid will be determined to be the winning bid. The bidder that submits the second highest and best bid at the auction sale may be deemed to be, at the Debtors' sole discretion, the winning backup bidder.

12. If no bid is accepted by the Debtors as a qualified bid, or if no potential winning bid is accepted by the Debtors as the winning bid, the auction sale will not proceed and/or will be terminated with no winning bidder.

13. A hearing (the "<u>Sale Hearing</u>") will be held on June 7, 2017, at 2:00 p.m. for the court to consider approval of the Debtors' sale of assets to the winning bidder at the auction sale

(as well as any request by the Debtors to assume and assign to the winning bidder any of the Debtors' executory contracts and unexpired leases that the winning bidder wishes to have assigned to it) and related matters.  The Debtors will file a sale motion with the court by on or before May 17, 2017, and will file a supplement to the sale motion on June 2, 2017 disclosing and discussing the outcome of the auction, the winning bid (if any), and additional terms and conditions of the proposed sale.

14.   Subject only to entry by the court of the sale order (the "Sale Order"), the winning bidder will have until the later of:  (i) the first (1st) business day following the date on which all conditions to closing set forth in the agreed upon asset purchase agreement have been satisfied or waived, or (ii) the second (2nd) business day after expiration of the 14-day appeal period following entry of the Sale Order.  If the winning bidder fails to close, the winning bidder will be deemed to have forfeited its $50,000 non-refundable deposit unless the court or the Debtors agree to provide the winning bidder with an extension of time to close.  If the winning bidder fails to close and forfeits its deposit, the winning back up bidder will be notified and will then have seven business days to close its purchase of the Debtors' assets or will be deemed to have forfeited its deposit unless the court or the Debtors agree to provide the winning backup bidder with an extension of time to close.

###

Date: May 11, 2017

Deborah J. Saltzman
United States Bankruptcy Judge