DAVID L. NEALE (SBN 141225)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: dln@lnbyb.com; kjm@lnbyb.com

Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CARTEL MANAGEMENT, INC.<br><br>                    Debtor. | Lead Case No. 2:17-bk-11179-DS<br><br>Jointly administered with:<br><br>Case No. 2:17-bk-11181-DS<br>(Titans of Mavericks, LLC) |
| In re:<br><br>TITANS OF MAVERICKS, LLC,<br><br>                    Debtor. | Chapter 11 |
| ☒ Affects Both Debtors<br><br>☐ Affects Cartel Management, Inc. only<br><br>☐ Affects Titans of Mavericks, LLC only | **DEBTORS' MOTION FOR ENTRY OF AN ORDER: (1) APPROVING SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; (2) FINDING SETTLEMENT AGREEMENT HAS BEEN ENTERED INTO IN GOOD FAITH FOR ALL PURPOSES; AND (3) AUTHORIZING THE DEBTORS TO IMPLEMENT SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GRIFFIN GUESS IN SUPPORT THEREOF**<br><br>**Hearing Schedule:**<br>Date:  June 7, 2017<br>Time:  2:00 p.m.<br>Place:  Courtroom 1639<br>          255 East Temple Street<br>          Los Angeles, CA 90012 |

Cartel Management, Inc. ("CMI") and Titans of Mavericks, LLC ("Titans", and collectively with CMI, the "Debtors"), Chapter 11 debtors and debtors in possession in the above-entitled, jointly-administered, Chapter 11 bankruptcy cases, hereby file this Motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, for entry of an order: (1) approving that certain "Settlement Agreement And Mutual General Release" (the "Agreement") by and between CMI and Griffin Guess, on the one hand, and Body Glove International, LLC ("Body Glove"), on the other hand, a true and correct copy of which is attached as Exhibit 1; (2) finding the Agreement has been entered into in good faith for all purposes; and (3) authorizing the Debtors to implement the Agreement.  Capitalized terms not otherwise defined have the meaning ascribed to such terms in the Agreement.

## Description of the Agreement[1]

Pre-petition, Body Glove filed a civil action in the Superior Court for the State of California, County of Los Angeles, Case No. BC560078 (the "Litigation") against CMI, Griffin Guess, and Mavericks Invitational Inc. ("MII"), in connection with disputes between CMI, Mr. Guess, MII and Body Glove related to a Sponsorship Agreement between Body Glove and MII. Neither the Debtors nor Mr. Guess are a party to that Sponsorship Agreement, but Body Glove claimed in the Litigation that CMI and Mr. Guess tortiously interfered with Body Glove's contract with MII.  Cartel and Mr. Guess denied all of Body Glove's claims.

Post-petition, Body Glove filed a proof of claim against CMI, asserting a claim in the amount of $1,500,000 based on the Litigation, not including alleged charges, fees, costs, expenses, and alleged prejudgment interest.  A true and correct copy of that proof of claim is attached as Exhibit 2, and it includes a true and correct copy of the complaint filed by Body Glove in the Litigation.  CMI has, at all times, denied any liability for the Body Glove claim.

---

[1] To the extent there is any discrepancy between the summary of the terms of the Agreement set forth herein and the actual terms of the Agreement, the actual terms of the Agreement shall govern.

Post-petition, over the course of weeks, CMI and Body Glove engaged in settlement discussions and have agreed, subject to Bankruptcy Court approval, to settle all of their disputes, including the Litigation and the $1.5 million claim against CMI.

Pursuant to the Agreement, **all** of the disputes between the Parties will be resolved, in exchange for a $5,000 payment to Body Glove from CMI.  The Debtors believe that the Agreement is in the best interest of the Debtors' estates and creditors of the Debtors' estates, because the Agreement resolves a $1.5 million claim for only $5,000.  Given that Body Glove's claims remain unliquidated, and given that Body Glove has timely filed a proof of claim in CMI's bankruptcy case, the Debtors submit that, in order to obtain an order or judgment disallowing Body Glove's claim in its entirety, or reducing Body Glove's claim, and resolving the Litigation, CMI will be required to spend multiples of the $5,000 settlement amount.   Moreover, while CMI does not believe that any of Body Glove's claims have any merit, there is no absolute assurance that CMI will be successful in defending against all of Body Glove's claims.  Given the reality that it will cost CMI money to defend against the Litigation, and given that any money spent litigating against Body Glove would likely not be recoverable from Body Glove, and given that there is a possibility that CMI does not prevail in the Litigation, the Debtors submit that the Agreement, which will only cost CMI $5,000 (plus the cost of bringing this Motion which the Debtors project to be less than $5,000), should be approved by the Bankruptcy Court.

**WHEREFORE**, the Debtors request that the Court enter an order:

1. Granting this Motion;

2. Approving the Agreement and finding that the Agreement has been entered into by the Parties in good faith for all purposes;

3. Authorizing CMI to pay to Body Glove the sum of $5,000 in connection with the Agreement and  to take any and all actions reasonably necessary to effectuate the terms of the Agreement; and

4. Granting such further relief as the Court deems appropriate.

Dated: May 17, 2017

CARTEL MANAGEMENT, INC.; TITANS OF MAVERICKS, LLC

By: ___*/s/ Krikor J. Meshefejian*_____
        DAVID L. NEALE
        KRIKOR J. MESHEFEJIAN
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
Counsel for Chapter 11 Debtors and Debtors in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

**A.    Brief Description Of The Debtors' Business And Operations.**

CMI and Titans together promote, organize, and host one of the most famous sporting events in "big wave" surfing, known as "Titans of Mavericks" at the Pacific Ocean surf break popularly known as "Mavericks" located near Half Moon Bay, California, just south of San Francisco.  This one-day, invitation only, surfing competition attracts professional big wave surfers from across the globe.  The competition is limited to twenty four of the world's best male surfers, and six of the world's best female surfers, challenging the massive swells and each other on the biggest and best surf days every winter.  It is not uncommon for competition waves to be in excess of fifty feet.  The current competition date generally spans from November through March 31 each year.  When weather and surf conditions are determined to be satisfactory, notice is provided to the contestants of the commencement of the event.  The event does not necessarily occur every year – if weather and wave conditions are not deemed satisfactory, the event is not held.[2]

CMI and Titans work collectively to promote, organize, and host the event.  CMI generally is in the business of event and brand management and media broadcast development to promote, produce, develop and market intellectual properties to develop stronger media presence and business models for the exploitation of such intellectual properties.  CMI is wholly owned by Griffin Guess.  Mr. Guess is also the President and sole member of the Board of Directors of CMI.

In 2015, Mr. Guess created Titans to hold the intellectual properties and handle the actual day to day tasks related to the organization of the Titans of Mavericks surf event.  Mr. Guess is the sole manager and member of Titans.  CMI and Titans therefore work hand in hand to promote, organize, and host the event.  The Debtors have approximately six staffers.  The Debtors have common ownership and business goals, with CMI providing the licensing and intellectual

---

[2] Although the competition was not held prior to March 31, 2017, the event may still be held later this year.

property needed to conduct the event, and Titans actually managing and hosting the event.  CMI has no secured debt and approximately $1.232 million of general unsecured debt.  Titans has no secured debt and approximately $1.532 million of general unsecured debt.  During the past eighteen months, the Debtors and their principal have spent in excess of $3 million developing and marketing the Titans of Mavericks brand, paying operating expenses, and obtaining the intellectual property and permits in connection with the surf event.

The Debtors have obtained Court approval of an auction of substantially all of their assets related to "Titans of Mavericks" and bidding procedures for the auction, which is scheduled to take place on June 1, 2017.

**B.**     **The Litigation And Body Glove's Proof Of Claim.**

On October 7, 2014, Body Glove filed a civil action in the Superior Court for the State of California, County of Los Angeles, Case No. BC560078 (the "Litigation") against CMI, Griffin Guess, and Mavericks Invitational Inc. ("MII"), in connection with disputes between Body Glove and MII related to a Sponsorship Agreement between Body Glove and MII.  Neither the Debtors nor Mr. Guess are a party to that Sponsorship Agreement.  Body Glove's complaint in the Litigation lists CMI and Mr. Guess as defendants in connection with the third and fourth counts of the complaint, for "unfair business practices" and "tortious interference with contract." Cartel and Mr. Guess denied all of Body Glove's claims.  The Litigation was stayed as to the Debtors upon the filings of the Debtors' bankruptcy cases.

On April 24, 2017, Body Glove filed a proof of claim against CMI, asserting a claim in the amount of $1,500,000 based on the Litigation, not including alleged charges, fees, costs, expenses, and alleged prejudgment interest.  A true and correct copy of that proof of claim is attached as Exhibit 2, and it includes a true and correct copy of the complaint filed by Body Glove in the Litigation.

Post-petition, over the course of many weeks, CMI and Body Glove engaged in settlement discussions and have agreed, subject to Bankruptcy Court approval, to settle all of their disputes, including the Litigation and the $1.5 million claim against CMI.

**C.      The Agreement.**

The salient terms of the Agreement are as follows:

1.      Mutual Compromise.  Subject to the terms of the Agreement, Body Glove, CMI, and Mr. Guess, among other parties, settle the Litigation, proof of claim, and any other claims between and among the parties, on the following terms and conditions:

(a)      Within five business days following the Effective Date of the Agreement, CMI shall cause to be delivered to Body Glove a cashier's check in the amount of $5,000.[3]

(b)      Within five business days following Body Glove's receipt of the payment, Body Glove will dismiss the Litigation with prejudice as to CMI and Mr. Guess.[4]

2.      Releases.  The parties to the Agreement will provide mutual and general releases as set forth in paragraphs 2 and 3 to the Agreement.  Both of the Debtors are receiving, and are providing, releases to Body Glove, under the Agreement.

## II.      THE AGREEMENT SHOULD BE APPROVED PURSUANT TO RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

The authority granted a debtor in possession to compromise a controversy or agree to a settlement is set forth in Bankruptcy Rule 9019(a), which provides in pertinent part that "[o]n motion by the [debtor in possession] and after hearing on notice to creditors ..., the court may approve a compromise or settlement."  The decision of whether a compromise should be accepted or rejected lies within the sound discretion of the Court.  *In re Carson*, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987; *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr. D. R.I. 1986); *In re Mobile Air Drilling Co., Inc.,* 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985); *Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bankr. D. Me. 1983).

---

[3] As reflected on CMI's most recent monthly operating report, CMI is currently holding approximately $230,000 in unencumbered cash.

[4] Pursuant to paragraph 12 of the Agreement, Body Glove has agreed to execute any and all documents as may be reasonably necessary in order to fully effectuate the Agreement – the Debtors will request and Body Glove is required to withdraw its proof of claim with prejudice.

The Court of Appeals for the Ninth Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).  "The purpose of a compromise agreement is to allow the [debtor in possession] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. denied* 479 U.S. 854 (1986). Accordingly, in approving a settlement agreement, the Court need not conduct an exhaustive investigation of the claims sought to be compromised.  *See United States v. Alaska National Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).  Rather, it is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *See In re A & C Properties, supra*, 784 F.2d at 1381.

The Court of Appeals for the Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable:

(a)    the probability of success in the litigation;

(b)    the difficulties, if any, to be encountered in the matter of collection;

(c)    the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and

(d)    the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Properties, supra*, 784 F.2d at 1381 (the "A & C Factors").

A court should not substitute its own judgment for the judgment of the trustee or the debtor in possession.  *Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D. N.Y. 1984). A court, in reviewing a proposed settlement, is not to decide the numerous questions of law and fact but rather to canvass the issues to determine whether the settlement falls below the lowest point in the range of reasonableness.  *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2nd Cir. 1983), *accord*, *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972).  The court should not conduct a "mini-trial" on the merits of the underlying cause of action.  *Matter of Walsh Const., Inc.*, 669

F.2d 1325, 1328 (9th Cir. 1982); In re Blair, 538 F.2d 849 (9th Cir. 1976).  "It is well established that compromises are favored in bankruptcy."  *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990).   The Debtors believe that the Agreement is reasonable, fair and equitable and is in the best interests of the Debtors' estates.  A review of the A & C Factors below supports the Court's approval of the Agreement.

(a)    The probability of success in the litigation.

Pursuant to the Agreement, all of the claims, litigation and disputes between and among the Parties will be resolved.  The Agreement will result in the dismissal with prejudice of the Litigation and release of Body Glove's claims against the Debtors, including the proof of claim filed by Body Glove in CMI's bankruptcy case.  The Agreement will cost CMI $5,000.

While it is *possible* that CMI may achieve a superior result by continuing to litigate with Body Glove, the Debtors have arrived at the conclusion that the terms of the Agreement, which immediately resolves all disputes at a fraction of what it would cost to liquidate Body Glove's claims in the Litigation and/or in this Court is far superior to a potentially "better" result that could be achieved by litigating with Body Glove.  Moreover, the cost of the Agreement to CMI is fixed at $5,000, whereas the cost of continuing to litigate is wholly unknown, and will be substantially in excess of the settlement sum without any guarantee of litigation success.  Thus, even a victory by CMI would be a hollow victory in comparison to the cost of the Agreement.

In light of the costs of litigating with Body Glove in comparison to the settlement amount, the Debtors believe that the probability of success in litigation does not outweigh the significant cost savings and benefits of the Agreement.

(b)    The difficulties, if any, to be encountered in the matter of collection.

The Debtors do not believe this factor applies to the Agreement.   The Agreement *significantly reduces* claims against the Debtors' bankruptcy estates.

/ / /

/ / /

/ / /

/ / /

(c)    The complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it.

While the disputes between the Parties are not extremely complex, they will still require time and the expenditure of resources to resolve. The Debtors project that the cost of resolving the Litigation will be far in excess of the cost of the Agreement, and likely multiples of the settlement amount of $5,000.

(d)    The paramount interest of the creditors and a proper deference to their reasonable views.

The paramount interest of the creditors of the Debtors' estates is best served by the Agreement. Without the Agreement, the Debtors will be required to liquidate or otherwise resolve Body Glove's claims. The liquidation and resolution of Body Glove's claims, absent a settlement agreement, will require the Debtors to incur administrative expenses. The Debtors are virtually certain that engaging in the Litigation or a claim objection process with Body Glove, in which discovery will be required to be taken, briefs filed, and potentially a trial conducted, will cost multiples of the $5,000 settlement. Accordingly, it is in creditors' best interest to avoid such unrecoverable costs, avoid the incurrence of administrative claims, and resolve Body Glove's $1.5 million claim for $5,000.

## III.    THE COURT SHOULD FIND THAT THE AGREEMENT IS IN GOOD FAITH

The Court should determine that the Settlement is in good faith. Under California law, a determination that a settlement was made in good faith "shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor[.]" Cal. Code Civ. Proc. § 877.6. Interpreting section 877.6 of the California Code of Civil Procedure, the California Supreme Court has held that a "good faith" settlement determination requires consideration of whether "the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal. 3d 488, 499 (1985). In making such a determination, a number of factors must be taken into account, including: a rough approximation of a plaintiff's total recovery and the settlor's proportionate liability; the amount paid in settlement; the allocation of settlement

proceeds among plaintiffs; the settling party's financial condition and the availability of insurance; a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial; and evidence of any collusion, fraud, or tortious conduct. *Id.* The burden of proof is on the party asserting the lack of good faith, who must show that the settlement is so far "out of the ballpark" in relation to these factors as to be inconsistent with the equitable objectives of Section 877.6. [*Id.*]

"[O]nly when the good faith nature of a settlement is disputed, it is incumbent upon the trial court to consider and weigh the Tech-Bilt factors. That is to say, when no one objects, the barebones motion which sets forth the ground of good faith, accompanied by a declaration which sets forth a brief background of the case is sufficient." *City of Grand Terrace v. Superior Court* (1987) 192 Cal. App. 3d 1251, 1261.

The Agreement should be found to have been entered into by the parties in good faith, for a number of reasons, including that, CMI and Body Glove negotiated the Agreement at arms' length, based on the parties' respective risks and positions in the Litigation.  Moreover, since CMI is not a party to the contract between Body Glove and MII, CMI could never be held responsible for the primary cause of action alleged by Body Glove – breach of contract.  Finally, the settlement amount is fair, reasonable and in good faith because CMI is informed that it is the same settlement amount that Body Glove reached with MII, so there is not issue about it being unfair to MII.  For these reasons, as well as the reasons set forth above in Section II, the Court should determine that the Agreement is in good faith.

## IV.    CONCLUSION

WHEREFORE, the Debtors request that the Court enter an order:

1.  Granting this Motion;

2.  Approving the Agreement and finding that the Agreement has been entered into by the Parties in good faith for all purposes;

3.  Authorizing CMI to pay to Body Glove the sum of $5,000 in connection with the Agreement and  to take any and all actions reasonably necessary to effectuate the terms of the Agreement; and

1    4.  Granting such further relief as the Court deems appropriate.

2

3  Dated: May 17, 2017           CARTEL MANAGEMENT, INC.; TITANS OF
MAVERICKS, LLC

4

5                        By:   */s/ Krikor J. Meshefejian*
                             DAVID L. NEALE

6                           KRIKOR J. MESHEFEJIAN
                  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

7                  Counsel for Chapter 11 Debtors and Debtors in
Possession

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DECLARATION OF GRIFFIN GUESS**

I, Griffin Guess, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the President, sole member of the Board of Directors, and authorized representative of Cartel Management, Inc. ("CMI"), and I am the sole member and managing member of Titans of Mavericks, LLC ("Titans" and collectively with CMI, the "Debtors").

**A.      Brief Description Of The Debtors' Business And Operations.**

3.      CMI and Titans together promote, organize, and host one of the most famous sporting events in "big wave" surfing, known as "Titans of Mavericks" at the Pacific Ocean surf break popularly known as "Mavericks" located near Half Moon Bay, California, just south of San Francisco.  This one-day, invitation only, surfing competition attracts professional big wave surfers from across the globe.  The competition is limited to twenty four of the world's best male surfers, and six of the world's best female surfers, challenging the massive swells and each other on the biggest and best surf days every winter.  It is not uncommon for competition waves to be in excess of fifty feet.  The current competition date generally spans from November through March 31 each year. When weather and surf conditions are determined to be satisfactory, notice is provided to the contestants of the commencement of the event.  The event does not necessarily occur every year – if weather and wave conditions are not deemed satisfactory, the event is not held.[5]

4.      CMI and Titans work collectively to promote, organize, and host the event.  CMI generally is in the business of event and brand management and media broadcast development to promote, produce, develop and market intellectual properties to develop stronger media presence and business models for the exploitation of such intellectual properties.  CMI is wholly owned by me.

---

[5] Although the competition was not held prior to March 31, 2017, the event may still be held later this year.

5.     In 2015, I created Titans to hold the intellectual properties and handle the actual day to day tasks related to the organization of the Titans of Mavericks surf event.  I am the sole manager and member of Titans.   CMI and Titans therefore work hand in hand to promote, organize, and host the event.  The Debtors have approximately six staffers.  The Debtors have common ownership and business goals, with CMI providing the licensing and intellectual property needed to conduct the event, and Titans actually managing and hosting the event.  CMI has no secured debt and approximately $1.232 million of general unsecured debt.  Titans has no secured debt and approximately $1.532 million of general unsecured debt.  During the past eighteen months, the Debtors and I have spent in excess of $3 million developing and marketing the Titans of Mavericks brand, paying operating expenses, and obtaining the intellectual property and permits in connection with the surf event.

6.     The Debtors have obtained Court approval of an auction of substantially all of their assets related to "Titans of Mavericks" and bidding procedures for the auction, which will take place on June 1, 2017.

**B.**     **The Litigation And Body Glove's Proof Of Claim.**

7.     On October 7, 2014, Body Glove filed a civil action in the Superior Court for the State of California, County of Los Angeles, Case No. BC560078 (the "Litigation") against CMI, me, and Mavericks Invitational Inc. ("MII"), in connection with disputes between Body Glove and MII  related to a Sponsorship Agreement between Body Glove and MII.  Neither the Debtors nor I are a party to that Sponsorship Agreement.   Body Glove's complaint in the Litigation lists CMI and me as defendants in connection with the third and fourth counts of the complaint, for "unfair business practices" and "tortious interference with contract." Cartel and I denied all of Body Glove's claims.  The Litigation was stayed as to the Debtors upon the filings of the Debtors' bankruptcy cases.

8.     On April 24, 2017, Body Glove filed a proof of claim against CMI, asserting a claim in the amount of $1,500,000 based on the Litigation, not including alleged charges, fees, costs, expenses, and alleged prejudgment interest.  A true and correct copy of that

proof of claim is attached as Exhibit 2, and it includes a true and correct copy of the complaint filed by Body Glove in the Litigation.

9.      Post-petition, over the course of many weeks, CMI and Body Glove engaged in settlement discussions and have agreed, subject to Bankruptcy Court approval, to settle all of their disputes, including the Litigation and the $1.5 million claim against CMI.

## C.      **The Agreement.**

10.     The salient terms of the Agreement are as follows:

11.     <u>Mutual Compromise</u>.   Subject to the terms of the Agreement, Body Glove, CMI, and me, among other parties, settle the Litigation, proof of claim, and any other claims between and among the parties, on the following terms and conditions:

(a)     Within five business days following the Effective Date of the Agreement, CMI shall cause to be delivered to Body Glove a cashier's check in the amount of $5,000.

(b)     Within five business days following Body Glove's receipt of the payment, Body Glove will dismiss the Litigation with prejudice as to CMI and me.[6]

<u>Releases</u>.   The parties to the Agreement will provide mutual and general releases as set forth in paragraphs 2 and 3 to the Agreement.    Both of the Debtors are receiving, and are providing, releases to Body Glove, under the Agreement.

12.     Pursuant to the Agreement, ***all*** of the disputes between the parties will be resolved, in exchange for a $5,000 payment to Body Glove from CMI.  The Agreement resolves a $1.5 million claim for $5,000.  Given that Body Glove's claims remain unliquidated, and given that Body Glove has timely filed a proof of claim in CMI's bankruptcy case, in order to obtain an order or judgment disallowing Body Glove's claim in its entirety, or reducing Body Glove's claim, and resolving the Litigation, I project that CMI will be required to spend multiples of the $5,000 settlement amount.  That is, in order for CMI to

---

[6] Pursuant to paragraph 12 of the Agreement, Body Glove has agreed to execute any and all documents as may be reasonably necessary in order to fully effectuate the Agreement – the Debtors will request and Body Glove is required to withdraw its proof of claim with prejudice.

3

obtain an order disallowing Body Glove's claim in its entirety, I project that CMI will be required to retain an attorney capable of handling litigation against Body Glove, which will cost CMI substantially more than the settlement amount.  Moreover, while CMI and I do not believe that any of Body Glove's claims have any merit, there is no absolute assurance that CMI will be successful in defending against all of Body Glove's claims. Given the reality that it will cost CMI money to defend against the Litigation, and given that any money spent litigating against Body Glove would likely not be recoverable from Body Glove, and given that there is a possibility that CMI does not prevail in the Litigation, I submit that the Agreement, which will only cost CMI $5,000 (plus the cost of bringing this Motion which I project to be less than $5,000), should be approved by the Bankruptcy Court.

13.    CMI and Body Glove negotiated the Agreement at arms' length, based on the parties' respective risks and positions in the Litigation.   Moreover, since CMI is not a party to the contract between Body Glove and MII, I understand that CMI could not be held responsible for the primary cause of action alleged by Body Glove – breach of contract.  Finally, I am informed that the settlement amount set forth in the Agreement is the same settlement amount that Body Glove reached with MII.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed this _17_ th day of May, 2017, at _Santa Cruz_, California.

DocuSigned by:

GRIFFIN GUESS

930F798B6BC0473...

**EXHIBIT "1"**

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release ("Settlement Agreement") by and between Cartel Management, Inc. and Griffin Guess (collectively, "Cartel Parties"), on the one hand, and Body Glove International, LLC ("Body Glove"), on the other hand, is made effective fifteen (15) days after the Bankruptcy Court issues an Order approving the Settlement Agreement, provided that the Order becomes a final non-appealable order (the "Effective Date"). The parties mentioned above may on occasion be referred to as the "Parties" or in singular form as a "Party." This Settlement Agreement is made with reference to the facts and subject to the terms and conditions set forth below.

## RECITALS

WHEREAS, on or about October 8, 2013, Body Glove and Mavericks Invitational Inc. ("MII") entered into a Sponsorship Agreement;

WHEREAS, a dispute arose between Body Glove, on the one hand, and MII and the Cartel Parties, on the other hand, relating to the Sponsorship Agreement;

WHEREAS, on October 7, 2014, Body Glove filed a civil action against MII and the Cartel Parties in the Superior Court for the State of California, County of Los Angeles, designated Case No. BC560078 (the "Litigation");

WHEREAS, on January 31, 2017, Cartel Management, Inc. filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Central District of California, designated case No. 2:17-bk-11179-DS (the "Cartel Bankruptcy"); and

WHEREAS, the Parties now desire to resolve the Litigation, as well as all other claims and obligations which may exist as between the Cartel Parties and Body Glove.

NOW, THEREFORE, in consideration of the mutual promises, representations, warranties and covenants set forth below, and for other good and valuable consideration, receipt of which is hereby acknowledged, the Parties hereby agree to the following terms and conditions:

## AGREEMENT

1.    **Mutual Compromise.** Subject to the terms of this Settlement Agreement, Body Glove, on its own behalf, and on behalf of its past and present members, principals, parents, subsidiaries, partners, associates, employees, representatives, consultants, officers, directors, independent contractors, shareholders, advisors, agents, trusts, attorneys, affiliated or related entities, predecessors, successors, assigns, descendants, ancestors, dependents, heirs, executors and administrators, on the one hand, and Cartel Parties, on their own behalf, and on behalf of their past and present members, principals, parents, subsidiaries, partners, associates, employees, representatives, consultants, officers, directors, independent contractors, shareholders, advisors, agents, trusts, attorneys, affiliated or related entities, predecessors, successors, assigns, descendants, ancestors, dependents, heirs, executors and administrators, on the other hand, in consideration of the promises and concessions set forth below, hereby compromise and settle any

1

and all past, present, or future claims, demands, obligations, or causes of action, whether based on tort, contract (express or implied, written or oral), or other theories of recovery, that Body Glove, on the one hand, and the Cartel Parties, on the other hand, now have or may hereafter have against each other arising from and/or related (directly or indirectly) to the subject matter of the Litigation and to any and all contracts (express or implied, written or oral) including the Sponsorship Agreement, on the following terms and conditions:

(a) Within five business days following the Effective Date of this Settlement Agreement, the Cartel Parties shall cause to be delivered to Body Glove's counsel a cashier's check made out to "Yuval M. Rogson Trust Account" in the amount of $5,000.00 (the "Payment").

(b) Within five business days following Body Glove's counsel's receipt of the Payment in good funds, Body Glove agrees to dismiss the Litigation with prejudice as to the Cartel Parties by executing and filing the Request For Dismissal With Prejudice attached hereto as Exhibit A.

(c) The Parties agree that this compromise and settlement shall constitute a bar to all past, present, and future claims arising from and/or related (directly or indirectly) to the matters covered herein between the Parties including without limitation the subject matter of the Litigation and any and all contracts (express or implied, written or oral) including the Sponsorship Agreement.

2.    **Release By Body Glove.** Except for the promises and obligations created by Paragraph 1 of this Settlement Agreement, and upon the receipt and deposit of the Payment in good funds by Body Glove's counsel, Body Glove, on its own behalf, and on behalf of its past and present members, principals parents, subsidiaries, partners, associates, employees, representatives, consultants, officers, directors, independent contractors, shareholders, advisors, agents, trusts, attorneys, affiliated or related entities, predecessors, successors, assigns, descendants, ancestors, dependents, heirs, executors and administrators, hereby fully releases and discharges the Cartel Parties, and, subject to the exclusions set forth in Paragraph 5 of this Settlement Agreement, all of the Cartel Parties' members, principals, parents, subsidiaries, partners, associates, employees, representatives, consultants, officers, directors, independent contractors, shareholders, advisors, agents, trusts, attorneys, affiliated or related entities, predecessors, successors, assigns, descendants, ancestors, dependents, heirs, executors and administrators, from any and all rights, claims, debts, liabilities, obligations, settlement agreements, promises, damages, actions, and causes of action of any kind or nature, whether based on tort, contract (express or implied, written or oral), or other theories of recovery, whether known or unknown, suspected or unsuspected (hereafter altogether referred to as "Claims"), which Body Glove now has against the Cartel Parties, including but not limited to all Claims related to the Sponsorship Agreement and/or the Litigation.

3.    **Release By Cartel Parties.** Except for the promises and obligations created by Paragraph 1 of this Settlement Agreement, each and all of the Cartel Parties, on their own behalf, and on behalf of their past and present members, principals, parents, subsidiaries, partners, associates, employees, representatives, consultants, officers, directors, independent contractors, shareholders, advisors, agents, trusts, attorneys, affiliated or related entities, predecessors,

2

successors, assigns, descendants, ancestors, dependents, heirs, executors and administrators, hereby fully releases and discharges Body Glove, and all of its members, principals, parents, subsidiaries, partners, associates, employees, representatives, consultants, officers, directors, independent contractors, shareholders, advisors, agents, trusts, attorneys, affiliated or related entities, predecessors, successors (including without limitation DNSL Holdings, LLC), assigns, descendants, ancestors, dependents, heirs, executors and administrators, from any and all rights, claims, debts, liabilities, obligations, settlement agreements, promises, damages, actions, and causes of action of any kind or nature, whether based on tort, contract (express or implied, written or oral), or other theories of recovery, whether known or unknown, suspected or unsuspected (hereafter altogether referred to as "Claims"), which each and all of the Cartel Parties now have against Body Glove, including without limitation all Claims related to the Sponsorship Agreement and/or the Litigation.

4.    **Release Of Unknown Claims.**  The Parties intend and agree that the foregoing releases as between Body Glove, on the one hand, and Cartel Parties, on the other hand, will be effective as a bar to all actions, causes of actions, obligations, costs, expenses, attorneys' fees, damages, losses, claims, liabilities and demands of any and all character, nature and kind, whether based on tort, contract (express or implied, written or oral), or other theories of recovery, whether known or unknown, suspected or unsuspected, from the beginning of time. Consequently, the Parties expressly waive any and all rights and benefits conferred upon them by the provisions of Section 1542 of the California Civil Code, which reads as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN ITS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Parties hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code is the result of separate bargaining and that there are no undisclosed facts that would affect their willingness to make this waiver. The Parties expressly assume the risk of subsequently discovered information, facts, or law, which if known or understood by them may have affected this waiver.

5.    **Limitation on Releases**.  Notwithstanding any other provision of this Settlement Agreement, the compromise(s), settlement(s), and/or release(s) by Body Glove memorialized in this Settlement Agreement are not intended to encompass and shall not apply to any Claims against MII.

6.    **Warranties.**  The Parties represent and warrant that (a) except as to any requisite Bankruptcy Court approval, they have full and complete authority to enter into and execute the Settlement Agreement under the terms set forth herein, (b) they are the owners of and have not transferred, assigned, hypothecated, or otherwise disposed of any of the rights, obligations, or liabilities released under the terms of the Settlement Agreement, (c) that there has been and will be no assignment or transfer or purported assignment or transfer to any person or entity whatsoever, of any claim, debt, liability, demand, obligations, cost, expense, action, defense, or cause of action hereinabove released, (d) each individual signing the Settlement Agreement has

3

the full right, power, legal capacity and authority to execute the Settlement Agreement on behalf of the Party on whose behalf the individual so signs, is acting within the scope of such authority with the full knowledge and consent of such Party, and that no further approval or consent of any person, board of directors, partner, or other entity is necessary for the individual to execute the Settlement Agreement and bind the Party to the terms of the Settlement Agreement, except as may be required by Federal Rule of Bankruptcy Procedure 9019, (e) they have been represented by independent legal counsel of their own choice throughout all of the negotiations which preceded the execution of this Settlement Agreement, and that each Party has executed this Settlement Agreement with the consent and on the advice of such independent legal counsel, and (f) no Party nor any agents of the Parties have made any statement or representation to any other Party regarding any fact relied upon in entering into this Settlement Agreement, or in making the settlement provided for herein, except as is expressly stated in this Settlement Agreement and that each Party to this Settlement Agreement has made such investigation of the facts pertaining to this Settlement Agreement, and of all other matters pertaining thereto, as it deems necessary.

7.    **Waiver Of Right To Appeal Order**. The Parties agree that they shall not, and waive any right to, appeal an Order from the Bankruptcy Court approving the Settlement Agreement.

8.    **Non-Admission Of Liability Or Wrongdoing.**  Nothing in this Settlement Agreement shall be interpreted as any admission of any liability by any Party. The Parties entered into the Settlement Agreement to buy their peace, and to avoid any further claims, disputes, inconvenience, or expense, whether associated with the Litigation or otherwise.

9.    **Parties To Bear Their Own Costs.** Each Party shall bear their own attorneys' fees and costs.

10.    **Binding On Successors And Others**.   The provisions of this Settlement Agreement shall be deemed to bind, obligate, extend to, and inure to the benefit of the Parties and their respective past and present members, principals, parents, subsidiaries, partners, associates, employees, representatives, consultants, officers, directors, independent contractors, shareholders, advisors, agents, trusts, attorneys, affiliated or related entities, predecessors, successors, assigns, descendants, ancestors, dependents, heirs, executors and administrators.

11.    **Entire Agreement.**    This Settlement Agreement constitutes the entire understanding between the Parties with respect to the subject matter hereof, and supersedes all other agreements between the Parties, express or implied, whether written or oral, with respect to such subject matter. This Settlement Agreement sets forth the entire consideration for this Settlement Agreement and the terms thereof. No promise or inducement has been offered other than as set forth in this Settlement Agreement. This Settlement Agreement may not be changed, modified, or amended, except by written instrument, specifying that it amends this Settlement Agreement, signed by the Party against whom the enforcement of any waiver, change, modification, extension or discharge is sought.

12.    **Further Action.** The Parties agree to execute any and all documents or other instruments as may be reasonably necessary in order to fully effectuate the Settlement Agreement

4

and covenants of the Parties contained in this Settlement Agreement.  The Parties further agree to mutually cooperate with one another in carrying out the purposes of this Settlement Agreement.

13.    **No Oral Waiver Or Modification**.  None of the provisions of this Settlement Agreement may be waived or modified unless in writing and signed by all of the Parties hereto. Waiver of any one provision of this Settlement Agreement shall not be deemed or construed to be a waiver of any other provision of this Settlement Agreement.

14.    **Applicable Law.**  The terms of this Settlement Agreement and performance thereunder shall be construed, governed and interpreted in accordance with the laws of the State of California in effect on the date of the Settlement Agreement.  The Parties agree that the Bankruptcy Court for the Cartel Bankruptcy will retain jurisdiction to enforce the Settlement Agreement.  If for any reason the Bankruptcy Court has no jurisdiction or declines to exercise its jurisdiction, then the Parties agree that jurisdiction shall be before the Los Angeles Superior Court Judge presiding over the Litigation.

15.    **Construction**.  The Parties have cooperated and participated in the drafting and preparation of the Settlement Agreement, and the Settlement Agreement shall be construed as a whole according to its fair meaning and not for or against any Party.  The releases in the Settlement Agreement as between the Parties hereto should be construed to provide the broadest most effective release possible and to be as inclusive as possible.

16.    **Severability**.  If any provision of this Settlement Agreement is held invalid or unenforceable by any court of final jurisdiction, it is the intent of the Parties that all other provisions of this Settlement Agreement be construed to remain fully valid, enforceable and binding on the Parties.

17.    **Equal Bargaining Power.**  The Parties agree that they were of equal or relatively equal bargaining power and that in no way whatsoever shall this Settlement Agreement be deemed to be a contract of adhesion, unreasonable or unconscionable.

18.    **Effectiveness**.  This Settlement Agreement shall not become binding and shall have no force and effect whatsoever until the Effective Date, with the exception that the Parties agree that Bankruptcy Court approval is only a condition so long as the Cartel Bankruptcy is pending.  To this end, should the Cartel Bankruptcy case be dismissed prior to the Effective Date, the Parties agree that the Settlement Agreement will be a valid and enforceable agreement without Bankruptcy Court approval and be effective as of the date that the Cartel Bankruptcy is dismissed.

19.    **Counterpart Execution**.  This Settlement Agreement may be executed and delivered in two or more counterparts, including via facsimile or electronic mail, each of which, when so executed and delivered, shall be an original, and such counterparts together shall constitute but one and the same instrument and agreement, and the Settlement Agreement shall not be binding on any Party until all Parties have executed it.

/ / /

20. **Attorneys' Fees.** In the event that suit is brought to enforce or interpret any of the provisions of this Settlement Agreement, the prevailing Party shall be entitled to recover its attorneys' fees, expenses and costs of suit actually incurred. All such disputes shall be resolved in accordance with this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this instrument as of the day and year first hereinabove written.

<table>
<tr><td>"Body Glove"</td><td>"Cartel Management, Inc."</td></tr>
<tr><td>BODY GLOVE INTERNATIONAL, LLC</td><td>CARTEL MANAGEMENT, INC.</td></tr>
<tr><td>By: <em>[signature]</em></td><td>By: _____</td></tr>
<tr><td>Print Name: <em>Russell F. Lesser</em></td><td>Print Name: _____</td></tr>
<tr><td>Its: <em>PRESIDENT</em></td><td>Its: _____</td></tr>
</table>

"Griffin Guess"

Griffin Guess

By: _____

Print Name: _____

6

20.    **Attorneys' Fees.**  In the event that suit is brought to enforce or interpret any of the provisions of this Settlement Agreement, the prevailing Party shall be entitled to recover its attorneys' fees, expenses and costs of suit actually incurred.  All such disputes shall be resolved in accordance with this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this instrument as of the day and year first hereinabove written.

<table>
<tr><td>"Body Glove"</td><td>"Cartel Management, Inc."</td></tr>
<tr><td>BODY GLOVE INTERNATIONAL, LLC</td><td>CARTEL MANAGEMENT, INC.</td></tr>
</table>

By: _____    By: _____
                                                        930F798B6BC0473...
                                                        Griffin Guess

Print Name: _____    Print Name: _____

Its: _____    Its: _____President_____


"Griffin Guess"

Griffin Guess

By: _____
            930F798B6BC0473...

Print Name: _____Griffin Guess_____

6

# EXHIBIT A

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 235291 | FOR COURT USE ONLY |
|---|---|---|

NAME: Yuval M. Rogson
FIRM NAME: The Rogson Firm
STREET ADDRESS: 1875 Century Park East, Suite 1490
CITY: Los Angeles      STATE: CA     ZIP CODE: 90067
TELEPHONE NO.: 310-788-0054      FAX NO.: 310-494-0739
E-MAIL ADDRESS: yuval@rogsonfirm.com
ATTORNEY FOR (Name): Plaintiff Body Glove International, LLC

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central District - Stanley Mosk Court

Plaintiff/Petitioner: Body Glove International, LLC
Defendant/Respondent: Mavericks Invitational Inc., Cartel Management, Inc., and Griffin Guess

| REQUEST FOR DISMISSAL | CASE NUMBER:<br>BC 560078 |
|---|---|

**A conformed copy will not be returned by the clerk unless a method of return is provided with the document.**

**This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)**

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) [✔] With prejudice     (2) [ ] Without prejudice
   b. (1) [ ] Complaint          (2) [ ] Petition
      (3) [ ] Cross-complaint filed by (name):                          on (date):
      (4) [ ] Cross-complaint filed by (name):                          on (date):
      (5) [ ] Entire action of all parties and all causes of action
      (6) [✔] Other (specify):* Complaint as to defendants Cartel Management, Inc. and Griffin Guess

2. (Complete in all cases except family law cases.)
   The court [ ] did [X] did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date:
Yuval M. Rogson
(TYPE OR PRINT NAME OF [✔] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)                                    ▶
*If dismissal requested is of specified parties only or specified causes of action only,                    (SIGNATURE)
or of specified cross-complaints only, so state and identify the parties, causes of       Attorney or party without attorney for:
action, or cross-complaints to be dismissed.                                        [✔] Plaintiff/Petitioner    [ ] Defendant/Respondent
                                                                                    [ ] Cross Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:                                                                                ▶
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)                       (SIGNATURE)
** If a cross-complaint – or Response (Family Law) seeking affirmative         Attorney or party without attorney for:
relief – is on file, the attorney for cross-complainant (respondent) must sign    [ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
this consent if required by Code of Civil Procedure section 581 (i) or (j).        [ ] Cross Complainant

*(To be completed by clerk)*
4. [ ] Dismissal entered as requested on (date):
5. [ ] Dismissal entered on (date):                        as to only (name):
6. [ ] Dismissal **not entered** as requested for the following reasons (specify):

7. a. [ ] Attorney or party without attorney notified on (date):
   b. [ ] Attorney or party without attorney not notified. Filing party failed to provide
        [ ] a copy to be conformed  [ ] means to return conformed copy

Date:                           Clerk, by                                          , Deputy     Page 1 of 2

Form Adopted for Mandatory Use                    **REQUEST FOR DISMISSAL**     Code of Civil Procedure, § 581 et seq.; Gov. Code,
Judicial Council of California                                                   § 68637(c); Cal. Rules of Court, rule 3.1390
CIV-110 [Rev. Jan. 1, 2013]                                                      www.courts.ca.gov

CIV-110

| Plaintiff/Petitioner:<br>Defendant/Respondent: | CASE NUMBER: |
| --- | --- |

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*
3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one):*    Yes    No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date:

_____          ▶ _____

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)          (SIGNATURE)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTORS' MOTION FOR ENTRY OF AN ORDER: (1) APPROVING SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; (2) FINDING SETTLEMENT AGREEMENT HAS BEEN ENTERED INTO IN GOOD FAITH FOR ALL PURPOSES; AND (3) AUTHORIZING THE DEBTORS TO IMPLEMENT SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF GRIFFIN GUESS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 17, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Lynn Brown     notices@becket-lee.com**
- **Emily M Charley     echarley@hansonbridgett.com, ihaas@hansonbridgett.com**
- **Stephen D Finestone     sfinestone@fhlawllp.com**
- **Mary H Haas     maryhaas@dwt.com, melissastrobel@dwt.com;laxdocket@dwt.com**
- **Jeffrey S Kwong     jsk@lnbyb.com, jsk@ecf.inforuptcy.com**
- **Kenneth G Lau     kenneth.g.lau@usdoj.gov**
- **Paul J Laurin     plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com**
- **Krikor J Meshefejian     kjm@lnbrb.com**
- **David L. Neale     dln@lnbyb.com**
- **Adam M Satnick     dmarioni@r2lawgroup.com**
- **Stewart K Schmella     sschmella@lanzalawfirm.com, rbanda@lanzalawfirm.com**
- **United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov**
- **Phillip K Wang     phillip.wang@rimonlaw.com, david.kline@rimonlaw.com**

**2.  SERVED BY UNITED STATES MAIL**: On **May 17, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Body Glove International, LLC                         Body Glove International, LLC
Attn: Yuval Rogson, The Rogson Firm          504 N Broadway
1875 Century Park East, Ste. 1490                 Redondo Beach, CA 90277
Los Angeles, CA 90067

☐ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 17, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                **F 9013-3.1.PROOF.SERVICE**

1  ***Served via Attorney Service***
   Hon. Deborah J. Saltzman
2  United States Bankruptcy Court
   Edward R. Roybal Federal Building
3  255 E. Temple Street, Suite 1334
   Los Angeles, CA 90012

4
   I declare under penalty of perjury under the laws of the United States of America that the foregoing is
5  true and correct.

6
   | May 17, 2017 | Stephanie Reichert | /s/ Stephanie Reichert |
7  | Date | Type Name | Signature |

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**