1  DAVID L. NEALE (SBN 141225)
   KRIKOR J. MESHEFEJIAN (SBN 255030)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
4  Email: dln@lnbyb.com; kjm@lnbyb.com

5  Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CARTEL MANAGEMENT, INC.<br><br>           Debtor. | Lead Case No. 2:17-bk-11179-DS<br><br>Jointly administered with:<br>Case No. 2:17-bk-11181-DS<br>(Titans of Mavericks, LLC)<br><br>Chapter 11 |
| In re:<br><br>TITANS OF MAVERICKS, LLC,<br><br>           Debtor. | **DEBTORS' MOTION FOR ENTRY OF AN ORDER: (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS RELATED TO "TITANS OF MAVERICKS" FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS; (2) APPROVING DEBTORS' ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS; (3) APPROVING REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS WHICH ARE NOT ASSUMED; (4) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d); AND (5) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF GRIFFIN GUESS** |
| ☒ Affects Both Debtors<br><br>☐ Affects Cartel Management, Inc. only<br><br>☐ Affects Titans of Mavericks, LLC only | |
| | **Hearing Schedule:**<br>Date:  June 7, 2017<br>Time:  2:00 p.m.<br>Place:  Courtroom 1639<br>       255 East Temple Street<br>       Los Angeles, CA 90012 |

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................................4

**I.    STATEMENT OF FACTS** ........................................................................................4

    **A.    Brief Description Of The Debtors' Business And Operations** ...................4

    **B.    Events Leading To The Debtors' Bankruptcy Cases** ................................5

    **C.    The Debtors' Efforts To Market And Sell The Debtors' Assets** ...............5

**II.    DISCUSSION** ........................................................................................................6

    **A.    The Court Should Authorize the Debtors to Sell their Assets to the Highest Bidder(s) at the Auction Sale** ....................................................6

        **1.    Sound Business Purpose** ..................................................................7

        **2.    Accurate and Reasonable Notice** ....................................................8

        **3.    Fair and Reasonable Price** ...............................................................9

        **4.    Good Faith** .....................................................................................10

    **B.    Section 363(f) of the Bankruptcy Code Permits the Sale of the Debtors' Assets to Be Free and Clear of Any and All Liens, Claims and Interests** ......12

    **C.    The Court Should Authorize the Debtors to Assume and Assign to the Winning Bidder at the Auction Sale All Executory Contracts and Unexpired Leases that the Winning Bidder Wishes to Assume** ................15

    **D.    The Court Should Authorize the Debtors to Reject All Executory Contracts and Unexpired Leases that the Winning Bidder does not Assume and that the Debtor Designates as a Rejected Contract** ...............18

    **E.    The Debtors Request the Court to Waive the Fourteen-Day Waiting Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d)** ...................18

**III.    CONCLUSION** ...................................................................................................19

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (9th Cir. B.A.P. 2008) ("*Clear Channel*") ........................................................................................ 14

*Coastal Indus., Inc. v. U.S. Internal Revenue Service (In re Coastal Indus., Inc.)*, 63 B.R. 361 (Bankr. N.D. Ohio 1986) .............................................................................. 9

*Comm. of Equity SEC Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983) ...................................................................................................... 6, 7

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) ................... 6, 9, 10, 11

*In re AEG Acquisition Corp.*, 127 B.R. 34 (Bankr. C.D. Cal. 1991), *aff'd* 161 B.R. 50 (9th Cir. B.A.P. 1993) ........................................................................................ 16

*In re Alpha Industries, Inc.*, 84 B.R. 703 (Bankr. D. Mont. 1988) ............................... 11

*In re Apex Oil Co.*, 92 B.R. 847 (Bankr. E.D. Mo. 1988) ........................................... 11

*In re Atlanta Packaging Products, Inc.*, 99 B.R. 124 (Bankr. N.D. Ga. 1988) ............. 10

*In re Bowman*, 194 B.R. 227 (Bankr. D. Ariz. 1995) ................................................. 16

*In re Central Fla. Metal Fabrication, Inc.*, 190 B.R. 119 (Bankr. N.D. Fla. 1995) ........ 15

*In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir. 1986) ................................... 7

*In re Continental Country Club, Inc.*, 114 B.R. 763 (Bankr. M.D. Fla. 1990) .............. 15

*In re Delaware and Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) ........................... 7, 9

*In re Eliot*, 94 B.R. 343 (E.D. Pa. 1988) ................................................................. 13

*In re Embers 86th Street. Inc.*, 184 B.R. 892 (Bankr. S.D.N.Y. 1995) ....................... 16

*In re Ex-Cel Concrete Company, Inc.*, 178 B.R. 198 (9th Cir. BAP 1995) ................. 13

*In re Filtercorp, Inc.*, 163 F.3d 570 (9th Cir. 1998) ................................................. 11

*In re Gabel*, 61 B.R. 661 (Bankr. W.D. La. 1985) ................................................... 13

*In re Gucci*, 193 B.R. 411 (S.D.N.Y. 1996) ............................................................ 15

*In re Huntington, Ltd.*, 654 F.2d 578 (9th Cir. 1981) ................................................. 7

*In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.*, 77 B.R. 15 (Bankr. E.D. Pa. 1987) ............................................................................................................................. 11

*In re Integrated Resources, Inc.*, 135 B.R. 746 (Bankr. S.D.N.Y. 1992), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992) ............................................................................................... 10

*In re Karpe*, 84 B.R. 926 (Bankr. M.D. Pa. 1988) ....................................................... 9

*In re Klein Sleep Products, Inc.*, 78 F.3d 18 (2d. Cir. 1996) ...................................... 15

*In re Martin (Myers v. Martin)*, 91 F.3d 389 (3d Cir. 1996) ........................................ 6

*In re Paddlewheels, Inc.*, 2007 WL 1035151 (Bankr. E.D.La. April 2, 2007) ............ 13

*In re Prime Motors Inns*, 124 B.R. 378 (Bankr. S.D. Fla. 1991) ................................ 15

*In re Qintex Entertainment, Inc.*, 950 F.2d 1492 (9th Cir. 1991) ................................. 7

*In re Rock Indus. Mach. Corp.*, 572 F.2d 1195 (7th Cir. 1978) ................................. 11

*In re The Seychelles, Partnership and Genius Corp. v. Banyan Corp.*, 32 B.R. 708 (N.D. Tex. 1983) ........................................................................................................ 9

*In re Snyder*, 74 B.R. 872 (Bankr. E.D. Pa. 1987) ....................................................... 9

*In re Walter*, 83 B.R. 14 (9th Cir. B.A.P. 1988) ...................................................... 7, 8

*In re Wilde Horse Enterprises*, 136 B.R. 830 (Bankr. C.D. Cal. 1991) ................. 10, 11

*Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396 (Bankr. W.D. Pa. 1991) ............................................................................................. 7

*Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985) ..................................................... 9

**FEDERAL STATUTES**

11 U.S.C. § 363 .......................................................................................................... 8, 7

11 U.S.C. § 363(b) ................................................................................................ 6, 7, 8, 9

11 U.S.C. § 363(f) ............................................................................................... 2, 12, 13, 14

11 U.S.C. § 363(m) .............................................................................................. 2, 11, 19

11 U.S.C. § 365 ........................................................................................................ 16, 17

11 U.S.C. § 365(a) ........................................................................................................ 15

11 U.S.C. § 365(b)(1) ................................................................................................. 17, 18

11 U.S.C. § 365(f) ........................................................................................................ 16

11 U.S.C. § 365(i) ........................................................................................................... 2

11 U.S.C. § 541 .............................................................................................................. 15

11 U.S.C. § 1129 ............................................................................................................ 10

11 U.S.C. § 1107(a) ....................................................................................................... 15

**FEDERAL RULES**

Fed. R. Bankr. P. 6004(a) ............................................................................................... 9

Fed. R. Bankr. P. 6004(c) ............................................................................................... 9

Fed. R. Bankr. P. 6006(d) ............................................................................... 2, 3, 18, 19

Fed. R. Bankr. P. 6004(h) ............................................................................... 2, 3, 18, 19

Cartel Management, Inc. ("CMI") and Titans of Mavericks, LLC ("Titans", and collectively with CMI, the "Debtors"), Chapter 11 debtors and debtors in possession in the above-entitled, jointly-administered, Chapter 11 bankruptcy cases, hereby file this motion (the "Motion") seeking the entry of an order of the Court (A) pursuant to 11 U.S.C. § 363(f) approving the sale free and clear of all liens, claims and interests to the winning bidder at an auction sale to be conducted by the Debtors on June 1, 2017 of substantially all of the Debtors' assets related to "Titans of Mavericks" (excluding the Debtors' cash, avoidance causes of action, litigation rights and certain other excluded assets); (B) pursuant to 11 U.S.C. § 365, (i) authorizing the Debtors to assume executory contracts and unexpired leases and assign them to the winning bidder, and (ii) establishing the cure amounts, if any, payable under such executory contracts and unexpired leases; (C) authorizing the Debtors to reject executory contracts and unexpired leases that are not assumed and assigned; (D) waiving the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d) to enable the sale to close as quickly as possible; and (E) granting certain other related relief.  A more detailed analysis of the status of these cases and the bases for this Motion are set forth below in the annexed Memorandum of Points and Authorities and Declaration of Griffin Guess (the "Declaration").

WHEREFORE, the Debtors respectfully request that this Court:

1.    approve the sale of the Debtors' business/assets related to "Titans of Mavericks" to the winning bidder and winning back-up bidder at the auction sale free and clear of all liens, claims and interests;

2.    find that the winning bidder and winning back-up bidder at the auction sale are good faith buyers entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code;

3.    approve (effective as of the date of the sale closing) the Debtors' assumption and assignment to the winning bidder and winning back-up bidder at the auction sale the Designated Contracts (defined below);

4.    find that the Cures (defined below) which must be paid in connection with the Debtors' assumption and assignment of the Designated Contracts are the amounts set forth herein

2

and that adequate assurance of future performance has been demonstrated, and order that any party that fails to file a timely objection to this Motion shall be deemed to have consented to the amount of the Cures and be forever barred from challenging the Debtors' proposed amounts of the Cures;

5.      approve (effective as of the date of the sale closing) the Debtors' rejection of all of the contracts and leases that the Debtors designate as Rejected Contracts (defined below), with the Debtors reserving the right to modify or supplement this list of Rejected Contracts as the Debtors deem appropriate;

6.      enter a sale order in a form that is mutually agreed to between the Debtors and the winning bidder and winning back-up bidder at the auction sale;

7.      waive the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d); and

8.      grant such other and further relief as the Court deems just and proper.

Dated: May 17, 2017              CARTEL MANAGEMENT, INC.; TITANS OF
                                 MAVERICKS, LLC

                                 By: ___*/s/ Krikor J. Meshefejian*_____
                                       DAVID L. NEALE
                                       KRIKOR J. MESHEFEJIAN
                                 LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
                                 Counsel for Chapter 11 Debtors and Debtors in
                                 Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

**A.    Brief Description Of The Debtors' Business And Operations.**

CMI and Titans together promote, organize, and host one of the most famous sporting events in "big wave" surfing, known as "Titans of Mavericks" at the Pacific Ocean surf break popularly known as "Mavericks" located near Half Moon Bay, California, just south of San Francisco.  This one-day, invitation only, surfing competition attracts professional big wave surfers from across the globe.  The competition is limited to twenty four of the world's best male surfers, and six of the world's best female surfers, challenging the massive swells and each other on the biggest and best surf days every winter.  It is not uncommon for competition waves to be in excess of fifty feet.  The current competition date generally spans from November through March 31 each year.  When weather and surf conditions are determined to be satisfactory, notice is provided to the contestants of the commencement of the event.  The event does not necessarily occur every year – if weather and wave conditions are not deemed satisfactory, the event is not held.[1]

CMI and Titans work collectively to promote, organize, and host the event.  CMI generally is in the business of event and brand management and media broadcast development to promote, produce, develop and market intellectual properties to develop stronger media presence and business models for the exploitation of such intellectual properties.  CMI is wholly owned by Griffin Guess.  Mr. Guess is also the President and sole member of the Board of Directors of CMI.

In 2015, Mr. Guess created Titans to hold the intellectual properties and handle the actual day to day tasks related to the organization of the Titans of Mavericks surf event.  Mr. Guess is the sole manager and member of Titans.  CMI and Titans therefore work hand in hand to promote, organize, and host the event.  The Debtors have approximately six staffers.  The Debtors have common ownership and business goals, with CMI providing the licensing and intellectual

---

[1] Although the competition was not held prior to March 31, 2017, the event may still be held later this year.

property needed to conduct the event, and Titans actually managing and hosting the event. CMI has no secured debt and approximately $1.232 million of general unsecured debt. Titans has no secured debt and approximately $1.532 million of general unsecured debt. During the past eighteen months, the Debtors and their principal have spent in excess of $3 million developing and marketing the Titans of Mavericks brand, paying operating expenses, and obtaining the intellectual property and permits in connection with the surf event.

**B.    Events Leading To The Debtors' Bankruptcy Cases.**

The primary source of income for the Debtors is revenue generated from sponsorship and media agreements between CMI and third parties such as Red Bull, Clif Bar, Fox Sports and Pandora. The Debtors also generate revenue from the sale of products such as clothing, hats, posters, and stickers associated with the surfing event.

Despite revenue growth and significant increased attention for the event, the Debtors faced operating difficulties arising from delayed sponsor payments, political complications, costly litigation and the need to maintain their necessary permits in the face of continuing efforts by certain third parties to negatively affect the Debtors. The Debtors were forced to file for bankruptcy protection in order to obtain a breathing spell and hope to conduct either a sale of their business and/or assets, or internally restructure their financial affairs with an infusion of new equity. The Debtors have determined that an auction of their assets will motivate interested buyers to bid aggressively to allow the Debtors to obtain the highest and best value for such assets.

**C.    The Debtors' Efforts To Market And Sell The Debtors' Assets.**

Since February 10, 2017, the Debtors' principal has contacted marquee parties in the following five sectors: television network groups, media and internet companies, brand and product corporations, high net-worth individuals, and professional sports leagues and teams. In total, the Debtors have reached out to hundreds of parties and have had direct communications with approximately seventy parties. The Debtors created a substantive data room from which prospectively interested buyers can obtain extensive financial data and other information about the Debtors' assets. The Debtors have also assembled a substantial list of approximately 71

prospective buyers, and to date, approximately 11 buyers have signed confidentiality agreements and been provided with access to the data room.  The opportunity to acquire the Debtors' assets was widely broadcast, and the Debtors therefore believe that they have reasonably provided notice to the most likely candidates who may be interested in acquiring the Debtors' assets by way of the auction sale process.

On May 3, 2017, the Debtors filed that certain *Debtors' Motion For Entry Of An Order: (1) Approving Auction Sale Format And Bidding Procedures; (2) Approving Form Of Notice To Be Provided To Prospective Buyers; (3) Approving Form Of Asset Purchase Agreement For Prospective Overbidders To Use; And (4) Scheduling A Hearing For The Court To Consider Approval Of The Debtors' Asset Sale To The Highest And Best Bidder* (the "Bid Procedures Motion").  On May 11, 2017, the Bankruptcy Court entered an order (the "Bid Procedures Order") [Doc No 86] granting the Bid Procedures Motion.

Pursuant to the Bid Procedures Order, an auction will be conducted on June 1, 2017.  As soon as possible after the auction, assuming a winning bidder emerges, the Debtors will file a supplement to this Motion setting for the identity of the winning bidder and the terms and conditions of the proposed sale to the winning bidder.

## II.

## DISCUSSION

**A.    The Court Should Authorize the Debtors to Sell their Assets to the Highest Bidder(s) at the Auction Sale.**

Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  To approve a use, sale or lease of property other than in the ordinary course of business, the court must find "some articulated business justification."  *See, e.g., In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) citing *In re Schipper (Fulton State Bank v. Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Comm. of Equity SEC Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *Lionel Corp.* and requiring good

6

1  faith); *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (concluding that the

2  Third Circuit adopted the "sound business judgment" test in the *Abbotts Dairies* decision).

3  In the Ninth Circuit, "cause" exists for authorizing a sale of estate assets if it is in the best

4  interest of the estate, and a business justification exists for authorizing the sale. *In re Huntington,*

5  *Ltd.*, 654 F.2d 578 (9th Cir. 1981); *In re Walter*, 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988).  The

6  Ninth Circuit has also held that section 363 allows the sale of substantially all assets of a debtor's

7  bankruptcy estate after notice and a hearing.  *In re Qintex Entertainment, Inc.*, 950 F.2d 1492 (9th

8  Cir. 1991).

9  In determining whether a sale satisfies the business judgment standard, courts have held

10  that: (1) there be a sound business reason for the sale; (2) accurate and reasonable notice of the

11  sale be given to interested persons; (3) the sale yield an adequate price (i.e., one that is fair and

12  reasonable); and (4) the parties to the sale have acted in good faith.  *Titusville Country Club v.*

13  *Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *see also, In*

14  *re Walter*, 83 B.R. at 19-20.

15  The Debtors submit that their proposed sale of their business/assets to the highest

16  bidder(s) at the auction sale clearly comports with each of these four criteria and demonstrates

17  that the Debtors' business judgment to proceed with the sale is sound.

18  1.    Sound Business Purpose.

19  There must be some articulated business justification, other than appeasement of major

20  creditors, for using, selling or leasing property out of the ordinary course of business before the

21  bankruptcy court may order such disposition under Section 363(b).  *In re Lionel Corp.*, 722 F.2d

22  at 1070.  The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*,

23  83 B.R. 14, 19 (9th Cir. B.A.P. 1988) has adopted a flexible case-by-case test to determine

24  whether the business purpose for a proposed sale justifies disposition of property of the estate

25  under Section 363(b).  In *Walter*, the Bankruptcy Appellate Panel, adopting the reasoning of the

26  Fifth Circuit in *In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir. 1986) and the Second

27  Circuit in *In re Lionel Corp.*, *supra*, articulated the standard to be applied under Section 363(b) as

28  follows:

7

Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in Lionel, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the Debtor, creditors and equity holders, alike. He might, for example, look to such relevant facts as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*In Re Walter*, 83 B.R. at 19-20, *citing In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

The facts pertaining to the Debtors' proposed sale of their business/assets to the highest bidder(s) at the auction sale clearly substantiate the Debtors' business decision that such contemplated sale serves the best interests of the Debtors' estates and their creditors and merits the approval of the Court.

As indicated above, the Debtors have actively marketed their business and assets related to "Titans of Mavericks" for months, have reached out to key players in the action sports and entertainment industry, and have determined that the most likely manner of paying creditors in these cases is by monetizing the Debtors' assets for as high a price as possible. Absent a significant, timely monetizing event, recoveries to creditors and the timing of such recoveries are not certain in these cases. Thus, the Debtors submit that there is a sound business purpose for the Debtors to consummate a going concern sale of their business/assets to the highest bidder(s) at the auction sale. The Debtors therefore submit that their proposed sale is justified by sound business purposes, satisfying the first requirement for a sale under Section 363(b) of the Bankruptcy Code.

2.  Accurate and Reasonable Notice.

In connection with a proposed sale under Section 363 of the Bankruptcy Code, "four pieces of information must be presented to the creditors. The notice should: place all parties on notice that the debtor is selling its business; disclose accurately the full terms of the sale; explain the effect of the sale as terminating the debtor's ability to continue in business; and explain why

8

the proposed price is reasonable and why the sale is in the best interest of the estate." *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 180 (D. Del. 1991). A notice is sufficient if it includes the terms and conditions of the sale and if it states the time for filing objections. *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D. Pa. 1988). The purpose of the notice is to provide an opportunity for objections and hearing before the court if there are objections. *Id.*

Following the Court's approval of the Bid Procedures Motion, the Debtors provided notice of the opportunity to participate in the auction sale to all of the known prospective bidders. The Debtors are also providing notice of this Motion on all of the Debtors' creditors, the UST, those parties who have requested special notice and all other parties to executory contracts and unexpired leases.

The Debtors submit that the foregoing satisfies the requirements of Bankruptcy Rules 6004(a) and (c), which provide as follows:

> "(a) ... Notice of a proposed ... sale ... of property ... not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2),(c)(1),(i) and (k) ...
> (c) ... A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession..."

Fed. R. Bankr. P. 6004(a)(c). The Debtors have complied with all noticing procedures required by the Bankruptcy Rules and the Court.

    3.   <u>Fair and Reasonable Price</u>.

In order to be approved under Section 363(b) of the Bankruptcy Code, the purchase price must be fair and reasonable. *Coastal Indus., Inc. v. U.S. Internal Revenue Service (In re Coastal Indus., Inc.)*, 63 B.R. 361, 368 (Bankr. N.D. Ohio 1986). Several courts have held that "fair value" is given for property in a bankruptcy sale when at least 75% of the appraised value of such property is paid. *See In re Karpe*, 84 B.R. at 933; *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3d Cir. 1986); *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985); *In re Snyder*, 74 B.R. 872, 878 (Bankr. E.D. Pa. 1987); *In re The Seychelles, Partnership and Genius Corp. v.*

*Banyan Corp.*, 32 B.R. 708 (N.D. Tex. 1983). However, the Debtor also realizes that "its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." *In re Integrated Resources, Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992). "It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the [debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988); *see also In re Wilde Horse Enterprises*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ["in any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold"].

The sale process undertaken by the Debtors was specifically designed to insure that the highest price possible is obtained for the Debtors' business/assets. The Debtors engaged in an extensive and broad marketing and sale process for months, having facilitated due diligence with numerous parties. All interested and viable buyers were provided with equal access to the Debtors and their financial information. All prospective bidders have the equal opportunity to participate in the auction sale which is designed to achieve the highest and best price for the Debtors' business/assets, with no bidder having any advantage over any other. The Debtors therefore submit that the highest and best price obtained for the Debtors' business/assets at the auction sale represents the current fair market value of the Debtors' business/assets.

4.    <u>Good Faith</u>.

When a bankruptcy court authorizes a sale of assets pursuant to Section 363(b)(1), it is required to make a finding with respect to the "good faith" of Purchaser. *In re Abbotts Dairies*, 788 F.2d at 149. Such a procedure ensures that Section 363(b)(1) will not be employed to circumvent the creditor protections of Chapter 11, and as such, it mirrors the requirement of Section 1129, that the Bankruptcy Court independently scrutinizes the debtor's reorganization plan and makes a finding that it has been proposed in good faith. *Id.* at 150.

"Good faith" encompasses fair value, and further speaks to the integrity of the transaction. *In re Wilde Horse Enterprises*, 136 B.R. at 842. With respect to the debtor's conduct in conjunction with the sale, the good faith requirement "focuses principally on the element of

special treatment of the Debtor's insiders in the sale transaction." *See In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987).  With respect to the buyer's conduct, this Court should consider whether there is any evidence of "fraud, collusion between the purchaser and other bidders or the [debtor], or an attempt to take grossly unfair advantage of other bidders."  *In re Abbotts Dairies*, 788 F.2d at 147, *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 842; *In re Alpha Industries, Inc.*, 84 B.R. 703, 706 (Bankr. D. Mont. 1988).  In short, "[l]ack of good faith is generally determined by fraudulent conduct during the sale proceedings."  *In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988), *citing In re Exennium, Inc.*, 715 F.2d 1401, 1404-05 (9th Cir. 1983).

In *In re Filtercorp, Inc.*, 163 F.3d 570 (9th Cir. 1998), the Ninth Circuit set forth the following test for determining whether a buyer is a good faith purchaser:

> A good faith buyer "is one who buys 'in good faith' and 'for value.'" [citations omitted.]  [L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" [citations omitted.]

*Filtercorp*, 163 F.3d at 577.

The Debtor's marketing and sale efforts have been structured in a manner to avoid any fraud, collusion or unfair advantages.  No special treatment was provided to any bidder.  The Debtors will be providing all qualified bidders with a draft of the template asset purchase agreement that the Debtors have prepared.  Bidders are required to provide the Debtors with any proposed changes they have to the template asset purchase agreement prior to the auction sale.  The Debtors expect to negotiate with the winning bidder(s) at or prior to the auction sale modifications to the asset purchase agreement in arm's length, good faith negotiations. Based on the foregoing, the Debtors submit that the Court should find that the winning bidder(s) at the auction sale are entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

/ / /

/ / /

**B.** **Section 363(f) of the Bankruptcy Code Permits the Sale of the Debtors' Assets to Be Free and Clear of Any and All Liens, Claims and Interests.**

Section 363(f) of the Bankruptcy Code provides, in relevant part, as follows:

The trustee may sell property under subsection (b) . . . of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; ...

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) Such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Section 363(f) of the Bankruptcy Code was drafted in the disjunctive. Thus, a debtor need only meet the provisions of one of the five subsections of Section 363(f) in order for a sale of property to be free and clear of liens, claims and interests.

1. 363(f)(1)

The Debtors' assets may be sold free of unsecured claims under applicable law. Claims which assert rights to payment on an unsecured basis (whether or not disputed) are simply claims against the Debtors and do not legally attach to the Debtors' assets after sale. Given that such claims are claims for monetary relief which do not attach to the Debtors' assets, the Debtors' assets may therefore be sold free and clear of such claims. Moreover, there are no secured claims either scheduled by the Debtors or filed against the Debtors. That is, all of the claims asserted against the Debtors are unsecured claims.

2. 363(f)(2)

In the event none of the Debtors' creditors file a timely objection to the Debtors' proposed sale, the Debtors submit that the "consent" of an entity asserting an interest in the property sought

to be sold, as referenced in Section 363(f)(2) of the Bankruptcy Code, can be implied if such entity fails to make a timely objection to the sale after receiving notice of the sale. *In re Eliot*, 94 B.R. 343, 345 (E.D. Pa. 1988). In its ruling, the *Eliot* court relied on *In re Gabel*, 61 B.R. 661 (Bankr. W.D. La. 1985), which held that implied consent is sufficient to authorize a sale under § 363(f)(2). *See also*, *In re Ex-Cel Concrete Company, Inc.*, 178 B.R. 198, 203 (9th Cir. BAP 1995) ["The issue here is whether there was consent or non-opposition by Citicorp."]; *In re Paddlewheels, Inc.*, 2007 WL 1035151 (Bankr. E.D.La. April 2, 2007) ["The Sale Motion complies with section 363(f) of the Bankruptcy Code, in that the Trustee either obtained the consent of Whitney to the sale of the Vessel to Purchaser or Whitney had no objection to the Sale."].

As a result of the foregoing, the Debtors submits that the Court should approve the sale of the Debtors' business/assets to the highest bidder(s) at the auction sale free and clear of all liens (the Debtors are not aware of any liens against the Debtors' assets), claims and interests of those parties who do not file a timely objection to the sale, by deeming all such parties to have consented to the proposed sale pursuant to Section 363(f)(2) of the Bankruptcy Code.

3.    363(f)(3)

The Debtors do not believe that this subsection applies, because the Debtors do not believe that there are any liens against any of the Debtors' assets. Attached hereto as Exhibit 1 and Exhibit 2, are lien searches conducted for CMI and Titans, respectively. The lien search reports indicate that there are no records of liens against the Debtors or the Debtors' assets.

4.    363(f)(4)

If any party claims an alleged lien against or interest in the Debtors' assets related to "Titans of Mavericks", such liens and alleged interests are would be disputed by the Debtors and would be in bona fide dispute.

5.    363(f)(5)

Section 363(f)(5) of the Bankruptcy Code permits a sale of property free and clear of liens and interests if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5).

The Bankruptcy Appellate Panel for the Ninth Circuit has scrutinized § 363(f)(5) in the context of the sale of real property. *See Clear Channel Outdoor, Inc. v. Knupfer* (*In re PW, LLC*), 391 B.R. 25 (9th Cir. B.A.P. 2008) ("*Clear Channel*"). In *Clear Channel*, the senior secured creditor attempted to purchase the debtor's real property by way of a credit bid, free and clear of the interest of a nonconsenting junior lienholder outside of a plan of reorganization. The Bankruptcy Court approved the sale to the senior lender under § 363(f)(5), finding that § 363(f)(5) permits a sale free and clear of the creditor's interest in property "whenever a claim can be paid with money." 391 B.R. at 42.

In reversing the Bankruptcy Court's decision, the Bankruptcy Appellate Panel found that § 363(f)(5) requires that "(1) a proceeding exists or could be brought, in which (2) the nondebtor could be compelled to accept a money satisfaction of (3) its interest." *Id*. at 41. Taking up these factors in reverse order, the Bankruptcy Appellate Panel concluded that a lien, such as the lien of a secured lender, constitutes an "interest" for purposes of § 363(f)(5). With respect to the second factor, the Bankruptcy Appellate Panel ruled that § 363(f)(5) refers to those proceedings in which the creditor "could be compelled to take less than the value of the claim secured by the interest." *Id*. In order to approve a sale free and clear under § 363(f)(5), the Court must "make a finding of the existence of … a mechanism [to address extinguishing the lien or interest without paying such interest in full] and the [debtor in possession] must demonstrate how satisfaction of the lien 'could be compelled.'" *Id*. at 45. Finally, the Bankruptcy Appellate Panel held that § 363(f)(5) requires that there be, "or that there be the possibility of, some proceeding, either at law or at equity, in which the nondebtor could be forced to accept money in satisfaction of its interest." *Id.*

Here, all of the factors set forth in *Clear Channel* for a sale free and clear of claimants' interests are satisfied. Specifically, any party who asserts an "interest" in the Debtors' assets related to "Titans of Mavericks" could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. Similarly, any unsecured creditor of the Debtor's estate could undeniably be forced to accept, via court proceedings whereby such creditors could obtain money judgments against the Debtor, money satisfaction of their claims.

14

**C.**     **The Court Should Authorize the Debtors to Assume and Assign to the Winning Bidder at the Auction Sale All Executory Contracts and Unexpired Leases that the Winning Bidder Wishes to Assume.**

Barring exceptions not herein relevant, Sections 365(a) and 1107(a) authorizes a debtor in possession, "subject to the Court's approval, ... [to] assume or reject any executory contract or unexpired lease of the debtor."  A debtor in possession may assume or reject executory contracts for the benefit of the estate. *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 25 (2d. Cir. 1996); *In re Central Fla. Metal Fabrication, Inc.*, 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996).  In reviewing a debtor in possession's decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it.  *In re Continental Country Club, Inc.*, 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990); *see also In re Gucci*, 193 B.R. at 415. The business judgment standard requires that the court follow the business judgment of the debtor unless that judgment is the product of bad faith, whim, or caprice.  *In re Prime Motors Inns*, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991), *citing Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986).

In this case, the San Mateo County Harbor District (the "Harbor District") has claimed that the Debtors' five-year permit for use of public land at and near Pillar Point Harbor from November 1, 2016 through March 31, 2021 (the "Permit"), is not assignable without the Harbor District's and the public's consent.  First, the Debtors do not concede that the Permit, or any of the Debtors' other permits or contracts, are executory contracts that are capable of assumption or rejection.  The Debtors' interest in the Permit (and the Debtors' other permits and contracts) is, however, property of the bankruptcy estate under Section 541 of the Bankruptcy Code.  *See* 11 U.S.C. § 541(c)(1)(A) ("Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer agreement, or applicable nonbankruptcy law – (A) that restricts or conditions transfer of such interest by the debtor[.]").

Second, to the extent necessary and applicable, the Debtors will comply with the

provisions of Section 365 of the Bankruptcy Code in connection with the transfer of the Permit or any other permit or contract to a new buyer, and, Section 365 of the Bankruptcy Code further authorizes the Debtors to assign the Permit to a third party without the Harbor District's consent.

Section 365(f)(1) of the Bankruptcy Code provides that "[e]xcept as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the [debtor in possession] may assign such contract or lease under paragraph (2) of this subsection."  Thus, the Permit, and all of the Debtors' other executory contracts and unexpired leases, may be assigned by the Debtors absent the consent of counterparties, provided that the requirements of Section 365(f)(2) of the Bankruptcy Code are met.

Pursuant to Section 365(f)(2) of the Bankruptcy Code, a debtor may assign its executory contracts and unexpired leases, provided the debtor first assumes such executory contracts and unexpired leases in accordance with Section 365(b)(1), and provides adequate assurance of future performance by the assignee.  Pursuant to Section 365(b)(1), assumption of executory contracts and unexpired leases requires a debtor to: (a) cure any existing defaults under such agreements; (b) compensate all non-debtor parties to such agreements for any actual pecuniary loss resulting from the defaults; and (c) provide adequate assurance of future performance under the contract or lease.  11 U.S.C. § 365(b)(1); *see also In re Bowman*, 194 B.R. 227, 230 (Bankr. D. Ariz. 1995), *In re AEG Acquisition Corp.*, 127 B.R. 34, 44 (Bankr. C.D. Cal. 1991), *aff'd* 161 B.R. 50 (9th Cir. B.A.P. 1993).

The assumption and assignment of executory contracts furthers the goals of Chapter 11 of promoting reorganization by balancing the debtor's interest in maximizing the value of its estate against the contracting party's interest in receiving the benefit of its bargain and being protected against default by the debtor after assumption has occurred.  *In re Embers 86th Street. Inc.*, 184 B.R. 892, 896 (Bankr. S.D.N.Y. 1995).

Attached as Exhibit 3 to the annexed Declaration is a list of what the Debtors believe constitutes all of their unexpired leases and contracts (without conceding that the contracts are

16

executory contracts) (collectively, the "Contracts") along with what cure amounts (the "Cures"), if any, the Debtors believe will be required to be paid in order for the Contracts to be assumed by the Debtors and assigned to the winning bidder(s) (assuming that the Contracts are executory contracts capable of assumption or rejection).  Pursuant to this Motion, the other parties to the Contracts ("Counterparty" in the singular and "Counterparties" in the plural) shall have up until May 24, 2017 to file a pleading with the Court opposing the assumption and assignment of the Contracts and indicating that they dispute the Debtors' designation of the amount of the Cures.  If the Debtors and the Counterparties are not able to resolve their disagreement, the Court shall determine the amount of the Cures.  If the Counterparties do not file a timely pleading disputing the Debtors' designation of the amount of the Cures, the amount of the Cures designated by the Debtors shall be deemed to constitute the amount of the Cures which must be paid in order for the Debtors to assume the Contracts and assign the Contracts to the winning bidder or the winning backup bidder.  All prospective bidders will be required to designate which Contracts they desire to assume (the "Designated Contracts").  The winning bidder and the winning back-up bidder will be required to pay the full amount of all Cures related to the Designated Contracts, in cash, without reduction of or setoff against the purchase price to be paid by such winning or back-up bidder, at the time of the sale closing as a condition to their ability to consummate their purchase of the purchased assets unless the Counterparties agree otherwise.

**In connection with this Motion, the Debtors are requesting an order of the Court providing that the Cures are the cure amounts which the winning bidder and winning back-up bidder must pay to the Counterparties in order for the Debtors to be able to assume and assign (to the extent Section 365 is applicable) to the winning bidder and winning back-up bidder the Designated Contracts at the closing to enable the Debtors to satisfy the cure requirements of Section 365(b)(1)(A) of the Bankruptcy Code (if applicable).  In connection with the Debtors' assumption and assignment of the Designated Contracts to the winning bidder and winning back-up bidder, the winning bidder and winning back-up bidder shall be deemed to have assumed any on-going liabilities and obligations in connection with all Designated Contracts.**

**The winning bidder and winning back-up bidder shall be required to provide such information as is reasonably required by the Court to enable the winning bidder and winning back-up bidder to satisfy any applicable "adequate assurance of future performance" requirements of 11 U.S.C. § 365(b)(1)(C) with respect to all Designated Contracts.**

**D.    The Court Should Authorize the Debtors to Reject All Executory Contracts and Unexpired Leases that the Winning Bidder does not Assume and that the Debtor Designates as a Rejected Contract.**

In connection with this Motion, the Debtors are requesting an order of the Court providing that all of the Contracts which are not Designated Contracts and which are identified by the Debtors after the sale auction as Contracts to be rejected (the "Rejected Contracts") will be deemed rejected as of the closing of the Debtors' sale, with the Debtors reserving the right to supplement the list of Rejected Contracts as the Debtors obtain additional information from the winning bidder and winning back-up bidder.

**E.    The Debtors Request the Court to Waive the Fourteen-Day Waiting Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d).**

Bankruptcy Rule 6004(h) provides, among other things, that an order authorizing the use, sale or lease of property . . . is stayed until the expiration of fourteen days after entry of the Court order, unless the Court orders otherwise.  Bankruptcy Rule 6006(d) has a similar provision with respect to an order approving of a debtor's assumption and assignment of unexpired leases and executory contracts.

For all of the reasons set forth above, to make sure that the sale closing(s) occur timely and in order to ensure that the Debtors are able to preserve as much cash as possible, the Debtors believe that it is critically important that the Debtors and the winning bidder and winning back-up bidder be permitted to consummate their respective sale closing as soon after entry of the sale order as possible.  In order to facilitate the most expeditious sale closing possible, the Debtors request that any order approving the Debtors' sale of their business/assets  and the Debtors' assumption and assignment of the Designated Contracts  be effective immediately upon entry by

18

providing that the fourteen-day waiting periods of Bankruptcy Rule 6004(h) and 6006(d) are waived.

### III.

### CONCLUSION

Based upon all of the foregoing, the Debtors respectfully request that this Court:

1.      approve the sale of the Debtors' business/assets to the winning bidder and winning back-up bidder at the auction sale free and clear of all liens, claims and interests;

2.      find that the winning bidder and winning back-up bidder at the auction sale are good faith buyers entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code;

3.      approve (effective as of the date of the sale closing) the Debtors' assumption and assignment to the winning bidder and winning back-up bidder at the auction sale the Designated Contracts (defined below);

4.      find that the Cures (defined below) which must be paid in connection with the Debtors' assumption and assignment of the Designated Contracts are the amounts set forth herein and that adequate assurance of future performance has been demonstrated, and order that any party that fails to file a timely objection to this Motion shall be deemed to have consented to the amount of the Cures and be forever barred from challenging the Debtors' proposed amounts of the Cures;

5.      approve (effective as of the date of the sale closing) the Debtors' rejection of all of the contracts and leases that the Debtors designate as Rejected Contracts (defined below), with the Debtors reserving the right to modify or supplement this list of Rejected Contracts as the Debtors deem appropriate;

6.      enter a sale order in a form that is mutually agreed to between the Debtors and the winning bidder and winning back-up bidder at the auction sale;

7.      waive the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d); and

8.      grant such other and further relief as the Court deems just and proper.

Dated: May 17, 2017

CARTEL MANAGEMENT, INC.; TITANS OF
MAVERICKS, LLC

By:  */s/ Krikor J. Meshefejian*
     DAVID L. NEALE
     KRIKOR J. MESHEFEJIAN
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
Counsel for Chapter 11 Debtors and Debtors in
Possession

## DECLARATION OF GRIFFIN GUESS

I, Griffin Guess, hereby declare as follows:

1.    I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.    I am the President, sole member of the Board of Directors, and authorized representative of Cartel Management, Inc. ("CMI"), and I am the sole member and managing member of Titans of Mavericks, LLC ("Titans" and collectively with CMI, the "Debtors").

**A.    Brief Description Of The Debtors' Business And Operations.**

3.    CMI and Titans together promote, organize, and host one of the most famous sporting events in "big wave" surfing, known as "Titans of Mavericks" at the Pacific Ocean surf break popularly known as "Mavericks" located near Half Moon Bay, California, just south of San Francisco.  This one-day, invitation only, surfing competition attracts professional big wave surfers from across the globe.  The competition is limited to twenty four of the world's best male surfers, and six of the world's best female surfers, challenging the massive swells and each other on the biggest and best surf days every winter.  It is not uncommon for competition waves to be in excess of fifty feet.  The current competition date generally spans from November through March 31 each year.  When weather and surf conditions are determined to be satisfactory, notice is provided to the contestants of the commencement of the event.  The event does not necessarily occur every year – if weather and wave conditions are not deemed satisfactory, the event is not held.[2]

4.    CMI and Titans work collectively to promote, organize, and host the event.  CMI generally is in the business of event and brand management and media broadcast development to promote, produce, develop and market intellectual properties to develop stronger media presence and business models for the exploitation of such intellectual properties.  CMI is wholly owned by me.

5.    In 2015, I created Titans to hold the intellectual properties and handle the actual

---

[2] Although the competition was not held prior to March 31, 2017, the event may still be held later this year.

21

day to day tasks related to the organization of the Titans of Mavericks surf event.  I am the sole manager and member of Titans.  CMI and Titans therefore work hand in hand to promote, organize, and host the event.  The Debtors have approximately six staffers.  The Debtors have common ownership and business goals, with CMI providing the licensing and intellectual property needed to conduct the event, and Titans actually managing and hosting the event.  CMI has no secured debt and approximately $1.232 million of general unsecured debt.  Titans has no secured debt and approximately $1.532 million of general unsecured debt.  During the past eighteen months, the Debtors and I have spent in excess of $3 million developing and marketing the Titans of Mavericks brand, paying operating expenses, and obtaining the intellectual property and permits in connection with the surf event.

**B.**      **Events Leading To The Debtors' Bankruptcy Cases.**

6.      The primary source of income for the Debtors is revenue generated from sponsorship and media agreements between CMI and third parties such as Red Bull, Clif Bar, Fox Sports and Pandora.  The Debtors also generate revenue from the sale of products such as clothing, hats, posters, and stickers associated with the surfing event.

7.      Despite revenue growth and significant increased attention for the event, the Debtors faced operating difficulties arising from delayed sponsor payments, political complications, costly litigation and the need to maintain their necessary permits in the face of continuing efforts by certain third parties to negatively affect the Debtors.  The Debtors were forced to file for bankruptcy protection in order to obtain a breathing spell and hope to conduct either a sale of their business and/or assets, or internally restructure their financial affairs with an infusion of new equity.  The Debtors have determined that an auction of their assets will motivate interested buyers to bid aggressively to allow the Debtors to obtain the highest and best value for such assets.

**C.**      **The Debtors' Efforts To Market And Sell The Debtors' Assets.**

8.      Since February 10, 2017, I have contacted marquee parties in the following five sectors:   television network groups, media and internet companies, brand and product corporations, high net-worth individuals, and professional sports leagues and teams.  In total, I

have reached out to hundreds of parties and have had direct communications with approximately seventy parties. I created a substantive data room from which prospectively interested buyers can obtain extensive financial data and other information about the Debtors' assets. I also assembled a substantial list of approximately 71 prospective buyers, and to date, approximately 11 buyers have signed confidentiality agreements and been provided with access to the data room. The opportunity to acquire the Debtors' assets was widely broadcast, and I therefore believe that the Debtors have reasonably provided notice to the most likely candidates who may be interested in acquiring the Debtors' assets by way of the auction sale process.

9. On May 3, 2017, the Debtors filed that certain *Debtors' Motion For Entry Of An Order: (1) Approving Auction Sale Format And Bidding Procedures; (2) Approving Form Of Notice To Be Provided To Prospective Buyers; (3) Approving Form Of Asset Purchase Agreement For Prospective Overbidders To Use; And (4) Scheduling A Hearing For The Court To Consider Approval Of The Debtors' Asset Sale To The Highest And Best Bidder* (the "Bid Procedures Motion"). On May 11, 2017, the Bankruptcy Court entered an order (the "Bid Procedures Order") [Doc No 86] granting the Bid Procedures Motion.

10. Pursuant to the Bid Procedures Order, an auction will be conducted on June 1, 2017. As soon as possible after the auction, assuming a winning bidder emerges, the Debtors will file a supplement to this Motion setting for the identity of the winning bidder and the terms and conditions of the proposed sale to the winning bidder.

**D.** **The Court Should Authorize the Debtors to Sell their Assets to the Highest Bidder(s) at the Auction Sale.**

11. As indicated above, the Debtors have actively marketed their business and assets related to "Titans of Mavericks" for months, have reached out to key players in the action sports and entertainment industry, and have determined that the most likely manner of paying creditors in these cases is by monetizing the Debtors' assets for as high a price as possible. Absent a significant, timely monetizing event, recoveries to creditors and the timing of such recoveries are not certain in these cases. Thus, I respectfully submit that there is a sound business purpose for the Debtors to consummate a going concern sale of their business/assets to the highest bidder(s) at

the auction sale.

12.     Following the Court's approval of the Bid Procedures Motion, the Debtors provided notice of the opportunity to participate in the auction sale to all of the known prospective bidders.  Specifically, on May 15, 2017, I caused to be disseminated to approximately 350 parties the notice of auction sale approved by the Bankruptcy Court.

13.     I understand that the Debtors are also providing notice of the Motion on all of the Debtors' creditors, the UST, those parties who have requested special notice and all other parties to executory contracts and unexpired leases.

14.     The sale process undertaken by the Debtors was specifically designed to insure that the highest price possible is obtained for the Debtors' business/assets.  The Debtors engaged in an extensive and broad marketing and sale process for months, having facilitated due diligence with numerous parties.  All interested and viable buyers were provided with equal access to the Debtors and their financial information.  All prospective bidders have the equal opportunity to participate in the auction sale which is designed to achieve the highest and best price for the Debtors' business/assets, with no bidder having any advantage over any other.  I therefore respectfully submit that the highest and best price obtained for the Debtors' business/assets at the auction sale represents the current fair market value of the Debtors' business/assets.

15.     The Debtor's marketing and sale efforts have been structured in a manner to avoid any fraud, collusion or unfair advantages.  No special treatment was provided to any bidder.  The Debtors will be providing all qualified bidders with a draft of the template asset purchase agreement that the Debtors have prepared.  Bidders are required to provide the Debtors with any proposed changes they have to the template asset purchase agreement prior to the auction sale. The Debtors expect to negotiate with the winning bidder(s) at or prior to the auction sale modifications to the asset purchase agreement in arm's length, good faith negotiations. Based on the foregoing, I respectfully submit that the Court should find that the winning bidder(s) at the auction sale are entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

**E.    The Sale of the Debtors' Assets Should Be Free and Clear of Any and All Liens, Claims and Interests.**

16.    There are no secured claims either scheduled by the Debtors or filed against the Debtors.  That is, all of the claims asserted against the Debtors are unsecured claims.  Attached hereto as Exhibit 1 and Exhibit 2, are lien searches conducted for CMI and Titans, respectively.  The lien search reports indicate that there are no records of liens against the Debtors or the Debtors' assets.

17.    If any party claims an alleged lien against or interest in the Debtors' assets related to "Titans of Mavericks", such liens and alleged interests are would be disputed by the Debtors and would be in bona fide dispute.

**F.    The Court Should Authorize the Debtors to Assume and Assign to the Winning Bidder at the Auction Sale All Executory Contracts and Unexpired Leases that the Winning Bidder Wishes to Assume.**

18.    Attached as Exhibit 3 to this Declaration is a list of what the Debtors believe constitutes all of their unexpired leases and contracts (without conceding that the contracts are executory contracts) (collectively, the "Contracts") along with what cure amounts (the "Cures"), if any, the Debtors believe will be required to be paid in order for the Contracts to be assumed by the Debtors and assigned to the winning bidder(s) (assuming that the Contracts are executory contracts capable of assumption or rejection).  Pursuant to the Motion, the other parties to the Contracts ("Counterparty" in the singular and "Counterparties" in the plural) shall have up until May 24, 2017 to file a pleading with the Court opposing the assumption and assignment of the Contracts and indicating that they dispute the Debtors' designation of the amount of the Cures.  If the Debtors and the Counterparties are not able to resolve their disagreement, the Court shall determine the amount of the Cures.  If the Counterparties do not file a timely pleading disputing the Debtors' designation of the amount of the Cures, the amount of the Cures designated by the Debtors shall be deemed to constitute the amount of the Cures which must be paid in order for the Debtors to assume the Contracts and assign the Contracts to the winning bidder or the winning backup bidder.  All prospective bidders will be required to designate which Contracts they desire

to assume (the "Designated Contracts").  The winning bidder and the winning back-up bidder will be required to pay the full amount of all Cures related to the Designated Contracts, in cash, without reduction of or setoff against the purchase price to be paid by such winning or back-up bidder, at the time of the sale closing as a condition to their ability to consummate their purchase of the purchased assets unless the Counterparties agree otherwise.

**G.    The Court Should Authorize the Debtors to Reject All Executory Contracts and Unexpired Leases that the Winning Bidder does not Assume and that the Debtor Designates as a Rejected Contract.**

19.    In connection with the Motion, the Debtors are requesting an order of the Court providing that all of the Contracts which are not Designated Contracts and which are identified by the Debtors after the sale auction as Contracts to be rejected (the "Rejected Contracts") will be deemed rejected as of the closing of the Debtors' sale, with the Debtors reserving the right to supplement the list of Rejected Contracts as the Debtors obtain additional information from the winning bidder and winning back-up bidder.

**E.    The Debtors Request the Court to Waive the Fourteen-Day Waiting Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d).**

20.    For all of the reasons set forth above, to make sure that the sale closing(s) occur timely and in order to ensure that the Debtors are able to preserve as much cash as possible, the Debtors believe that it is critically important that the Debtors and the winning bidder and winning back-up bidder be permitted to consummate their respective sale closing as soon after entry of the sale order as possible.  In order to facilitate the most expeditious sale closing possible, the Debtors request that any order approving the Debtors' sale of their business/assets  and the Debtors' assumption and assignment of the Designated Contracts  be effective immediately upon entry of the sale order.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed this 17th day of May, 2017, at Santa Cruz, California.

*/s/ Griffin Guess*
GRIFFIN GUESS

condition to their ability to consummate their purchase of the purchased assets unless the Counterparties agree otherwise.

**G.  The Court Should Authorize the Debtors to Reject All Executory Contracts and Unexpired Leases that the Winning Bidder does not Assume and that the Debtor Designates as a Rejected Contract.**

19.     In connection with the Motion, the Debtors are requesting an order of the Court providing that all of the Contracts which are not Designated Contracts and which are identified by the Debtors after the sale auction as Contracts to be rejected (the "Rejected Contracts") will be deemed rejected as of the closing of the Debtors' sale, with the Debtors reserving the right to supplement the list of Rejected Contracts as the Debtors obtain additional information from the winning bidder and winning back-up bidder.

**E.  The Debtors Request the Court to Waive the Fourteen-Day Waiting Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d).**

20.     For all of the reasons set forth above, to make sure that the sale closing(s) occur timely and in order to ensure that the Debtors are able to preserve as much cash as possible, the Debtors believe that it is critically important that the Debtors and the winning bidder and winning back-up bidder be permitted to consummate their respective sale closing as soon after entry of the sale order as possible.  In order to facilitate the most expeditious sale closing possible, the Debtors request that any order approving the Debtors' sale of their business/assets  and the Debtors' assumption and assignment of the Designated Contracts  be effective immediately upon entry of the sale order.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed this 17th day of May, 2017, at Santa Cruz, California.

DocuSigned by:

_____
930F798B6BC0473...
GRIFFIN GUESS

# EXHIBIT "1"

Search Date: January 30, 2017

# CLAS

WORLDWIDE INFORMATION SERVICES

Better
Intelligence
Better
Decisions™

2020 Hurley Way, Suite 350  Sacramento, CA 95825
Local: (916) 564-7800  Fax: (916) 564-7900  Toll Free: (800) 952-5696

**Ask us about UCC eZFILE®**

## UCC Search Report

| | |
|---|---|
| **Type of Search** | UCCs, Federal Tax Liens, State Tax Liens, and Judgments |
| **Jurisdiction/Filing Office** | State of California, Secretary of State Uniform Commercial Code Division |
| **Indexed Through** | Jan. 19, 2017 |
| **Subject Search Name** | CARTEL MANAGEMENT, INC. |
| **Search Key Entered** | CARTE* MANA* |

## Results

Based on a search of the indices of the Uniform Commercial Code Division of the Secretary of State of California, there are no active liens of record other than those set out below. Liens reflected in this report were based on the searcher's individual search parameters, the search key entered, as well as the searcher's choice of the liens ultimately included or excluded herein. Certification can only be obtained through the office of the California Secretary of State.

**Clear, no matches were found for the search key as detailed above.**
Similar name(s) found. Please refer to attached listing.

We assume no liability with respect to the identity of any party named or referred to in this report, nor with respect to the validity, legal effect or priority of any matter shown herein; nor, due to our inability to independently verify the accuracy of this data as provided by government and other sources, do we make any guaranty or representation as to its accuracy.

**---------- END OF REPORT ----------**

## Report Parameters

The UCC Revised Article 9 Model Administrative Rules (MARS) provide state filing offices with a set of guidelines for producing a legally compliant UCC lien search report. The search tool used to create this search report was designed to satisfy the requirements under MARS while providing the searcher with increased flexibility.

Flexible search logic generates a more inclusive search report and addresses the inconsistencies in searches performed within states that did not effectively adopt the MARS guidelines. Further, these specially designed broad-based searching features aid in the location of involuntary liens such as Federal and State Tax Liens and Judgment Liens and liens that may not be located in state databases limited to the MARS guidelines for the reporting of UCCs.

Search Date: January 30, 2017



2020 Hurley Way, Suite 350  Sacramento, CA 95825
Local: (916) 564-7800  Fax: (916) 564-7900  Toll Free: (800) 952-5696

**Ask us about UCC eZFILE®**

## California Similar Name Report

| | |
|---|---|
| **Subject Search Name** | CARTEL MANAGEMENT, INC. |
| **Truncated Search Name** | CARTE* MANA* |
| **Indexed Through** | January 19, 2017 |

Contains all debtor names not included on the final results report.

| Filing # | Debtor Name | Address | City | State | Zip | Type |
|---|---|---|---|---|---|---|
| 20117269199207 | CARTER, LYMAN A | 11164 BAKER ROAD | VICTORVILLE | CA | 92392 | JL |
| 20067093945447 | CARTER MANAGEMENT GROUP, INC. | 2027 ELEVADO HILLS DRIVE | VISTA | CA | 92084 | UCC |
| 20067093853677 | CARTERA/TRILLIUM CONSTRUCTION MANAGERS | 4609 E. FLOWER ST. | PHOENIX | AZ | 85018 | STL |

**EXHIBIT "2"**

Search Date: January 30, 2017

# CLAS

**WORLDWIDE INFORMATION SERVICES**

Better
Intelligence
Better
Decisions™

2020 Hurley Way, Suite 350  Sacramento, CA 95825
Local: (916) 564-7800  Fax: (916) 564-7900  Toll Free: (800) 952-5696

**Ask us about UCC eZFILE®**

## UCC Search Report

| | |
|---|---|
| **Type of Search** | UCCs, Federal Tax Liens, State Tax Liens, and Judgments |
| **Jurisdiction/Filing Office** | State of California, Secretary of State Uniform Commercial Code Division |
| **Indexed Through** | Jan. 19, 2017 |
| **Subject Search Name** | TITANS OF MAVERICKS, LLC |
| **Search Key Entered** | TITAN* MAVE* |

## Results

Based on a search of the indices of the Uniform Commercial Code Division of the Secretary of State of California, there are no active liens of record other than those set out below. Liens reflected in this report were based on the searcher's individual search parameters, the search key entered, as well as the searcher's choice of the liens ultimately included or excluded herein. Certification can only be obtained through the office of the California Secretary of State.

**Clear, no matches were found for the search key as detailed above.**

We assume no liability with respect to the identity of any party named or referred to in this report, nor with respect to the validity, legal effect or priority of any matter shown herein; nor, due to our inability to independently verify the accuracy of this data as provided by government and other sources, do we make any guaranty or representation as to its accuracy.

**---------- END OF REPORT ----------**

## Report Parameters

The UCC Revised Article 9 Model Administrative Rules (MARS) provide state filing offices with a set of guidelines for producing a legally compliant UCC lien search report. The search tool used to create this search report was designed to satisfy the requirements under MARS while providing the searcher with increased flexibility.

Flexible search logic generates a more inclusive search report and addresses the inconsistencies in searches performed within states that did not effectively adopt the MARS guidelines. Further, these specially designed broad-based searching features aid in the location of involuntary liens such as Federal and State Tax Liens and Judgment Liens and liens that may not be located in state databases limited to the MARS guidelines for the reporting of UCCs.

# EXHIBIT "3"

**INTRODUCTORY NOTE:  The contracts, agreements, licenses, and permits listed herein constitute all of the contracts, agreements, licenses, and permits currently known to the Debtors, based on the Debtors' review of their books and records.  The Debtors' inclusion of a contract, agreement, license or permit herein shall not constitute an acknowledgment or admission that any of the listed contracts, agreements, licenses, or permits are executory in nature.  The Debtors reserves the right to modify, amend and supplement this list.**

## CARTEL MANAGEMENT, INC.

| Contracting Party | Description Of Contract | Cure Amount |
|---|---|---|
| California Coastal Commission | Permit (Permit No. 2-15-1458-A1, and any other permits) | $0.00 |
| Coastside Properties Coastside Self-Storage | Month-to-Month Rental of Storage Unit | $0.00 |
| Cube Smart | Month-to-Month Rental of Storage Unit | $0.00 |
| Dept. of Homeland Security U.S. Coast Guard | Marine Event Permit (Permit Nos. 16703, 16671, and any other permits) | $0.00 |
| Fox Sports 1, LLC | Event Agreement, as Amended | $280,000 |
| Mavericks Invitational, Inc. | Intellectual Property License Agreement, as Amended | $0.00 |
| Red Bull Media House North America, Inc. | Webcast Rights Agreement, as Amended | $0.00 |
| San Mateo Harbor District | Special Use Permit (Permit No. 2016-01, and any other permits) | $6,684.01 |
| U.S. Dept. of Commerce Monterey Bay | National Marine Sanctuary Authorization Permit (Permit No. MBNMS-2015-034, and any other permits) | $0.00 |

## TITANS OF MAVERICKS, LLC

| Contracting Party | Description Of Contract | Cure Amount |
|---|---|---|
| California State Lands Commission | License for the Use of the Pacific Ocean Offshore of Pillar Point | $0.00 |
| National Oceanic and Atmospheric Administration | Office of National Marine Sanctuaries Program Activities Permit (Permit No. MBNMS-2016-021 and any other permits) | $0.00 |

| San Mateo County Dept. of Public Works | Public Works Permit (Permit No. DPW2016-01493 and any other permits) | $0.00 |
| San Mateo County Parks | Special Events Permit (Permit No. 12072016-Mavericks and any other permits) | $0.00 |
| State of California Dept. of California Highway Patrol | Traffic Control Services Agreement (Contract No. R-16-330-0307, and any other contracts) | $0.00 |
| State of California Dept. of Transportation | Encroachment Permit (Permit No. 0416-6TK2639, and any other permits) | $0.00 |
| U.S. Dept. of Homeland Security - U.S. Coast Guard | Marine Event Permit (Permit No. SF-17-183, and any other permits) | $0.00 |

# PROOF OF SERVICE OF DOCUMENT

1

2   I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

3   A true and correct copy of the foregoing document entitled **DEBTORS' MOTION FOR ENTRY OF AN**
4   **ORDER: (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS RELATED TO "TITANS OF MAVERICKS" FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS; (2)**
    **APPROVING DEBTORS' ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND**
5   **EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS; (3) APPROVING REJECTION**
6   **OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS WHICH ARE NOT ASSUMED; (4)**
    **WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND**
7   **6006(d); AND (5) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**
    **IN SUPPORT THEREOF;DECLARATION OF GRIFFIN GUESS** will be served or was served **(a)** on the
8   judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated
    below:

9   **1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to
    controlling General Orders and LBR, the foregoing document will be served by the court via NEF and
10  hyperlink to the document. On **May 17, 2017**, I checked the CM/ECF docket for this bankruptcy case or
    adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to
11  receive NEF transmission at the email addresses stated below:

12  - **Lynn Brown    notices@becket-lee.com**
    - **Emily M Charley    echarley@hansonbridgett.com, ihaas@hansonbridgett.com**
13  - **Stephen D Finestone    sfinestone@fhlawllp.com**
    - **Mary H Haas    maryhaas@dwt.com, melissastrobel@dwt.com;laxdocket@dwt.com**
14  - **Jeffrey S Kwong    jsk@lnbyb.com, jsk@ecf.inforuptcy.com**
    - **Kenneth G Lau    kenneth.g.lau@usdoj.gov**
15  - **Paul J Laurin    plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com**
    - **Krikor J Meshefejian    kjm@lnbrb.com**
16  - **David L. Neale    dln@lnbyb.com**
    - **Adam M Satnick    dmarioni@r2lawgroup.com**
17  - **Stewart K Schmella    sschmella@lanzalawfirm.com, rbanda@lanzalawfirm.com**
    - **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
18  - **Phillip K Wang    phillip.wang@rimonlaw.com, david.kline@rimonlaw.com**

19
20  **2.  SERVED BY UNITED STATES MAIL**: On **May 17, 2017**, I served the following persons and/or
    entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true
21  and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and
    addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u>
    <u>completed</u> no later than 24 hours after the document is filed.

22

23                                                    ☒ *Service information continued on attached page*

24  **3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR**
25  **EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR,
    on **May 17, 2017**, I served the following persons and/or entities by personal delivery, overnight mail
26  service, or (for those who consented in writing to such service method), by facsimile transmission and/or
    email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight
    mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**_Served via Attorney Service_**
Hon. Deborah J. Saltzman
United States Bankruptcy Court
Edward R. Roybal Federal Building
255 E. Temple Street, Suite 1334
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 17, 2017 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                            **F 9013-3.1.PROOF.SERVICE**

Cartel Management, Inc.
Titans of Mavericks, LLC
Master Mailing List & RSN

Griffin Guess
1223 Windward Lane
Capitola, CA 95010-3936

United States Trustee
Kenneth G Lau
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

American Express Bank, FSB
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0701

San Mateo County Harbor District
504 Avenue Alhambra
El Granada, CA 94018

Ahn Group
4372 Neosho Avenue
Los Angeles, CA 90066-6132

Body Glove International, LLC
Attn: Yuval Rogson, The Rogson Firm
1875 Century Park East, Ste. 1490
Los Angeles, CA 90067

Red Bull Media House North America
1740 Stewart Street
Santa Monica, CA 90404

American Express
PO Box 981340
El Paso, TX 79998-1340

Beach Byte Processamento de Dados
Ltda.
Rua da Concei o, 188
1001B - Niter i – RJ
BRAZIL

California State Lands Commission
100 Howe Ave, Suite 100
Sacramento, CA 95825-8219

Cubed Service
4098 S. McCarren Blvd.
Reno, NV 89502-7526

Eric Weisman
33 W 60th Street Floor 4
New York, NY 10023-7905

FOX Sports Network, LLC
10201 W. Pico Blvd Building 103
Los Angeles, CA 90064-2606

Fox Sports
10201 W. Pico Blvd. Bldg 103
Los Angeles, CA 90064-2606

Hartnett Smith & Paetkau
777 Marshall Street
Redwood City, CA 94063-1800

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Khoury Bookkeeping & Tax
520 N. Brookhurst St. Suite 200
Anaheim, CA 92801-5236

Law Offices of Yuval Rogson
1875 Century Park East Suit 1490
Los Angeles, CA 90067-2515

Maverick Invitation, Inc.
25 Johnson Pier
Half Moon Bay, CA 94019-4069

Potato Press |1/20 George St
Southport, QLD 4215
AUSTRALIA

Red Bull Media House North America
c/o Mary H. Haas
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566

SMHD
400 Oyster Point Blvd, #300
South San Francisco, CA 94080-1919

Segler Holdings, LLC.
c/o LLF 4950 Bissonet Street
Long Branch, NJ 07740-1000

Tiedt Hurd
980 Montecito Drive, Suite 209
Corona, CA 92879-1793

Transition Productions
1046 Princeton, Suite 100
Marina Del Rey, CA 90292-5464

U.S. Security & Exchange Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-2934

Vogner Design
2233 Barry Avenue
Los Angeles, CA 90064-1401

California Coastal Commission
North Central Coast District
45 Freemont St., Suite 2000
San Francisco, CA 94105-2221

Cattos
111 Dubois Street
Santa Cruz, CA 95060-2108

Impact Lighting
70 West Ohio Ave, Suite E
Richmond, CA 94804-2033

Los Angeles County Treasurer And Tax
Collector
Po Box 54110
Los Angeles, CA 90054-0110

NOAA
991 Marine Drive
San Francisco, CA 94129-5265

Nikki Brooks
3736 Hilltop Ct.
Soquel, CA 95073-2307

Pacific RV & Boat Storage
PO Box 3637
Santa Cruz, CA 95063-3637

San Mateo County Parks Permit
Department of Parks
County of San Mateo
455 County Center, 4th Floor
Redwood City, CA 94063-1663

San Mateo Harbor District
400 Oyster Point Blvd #300
South San Francisco, CA 94080-1919

Savannah Shaughnessy
142 Zinfandel Cr
Scotts Valley, CA 95066-3256

Wells Fargo Credit Card Services
P.O. Box 51193
Los Angeles, CA 90051-5493

Counsel for Mavericks Invitational, Inc.
Richard Mooney, Phillip W. Wang (RSN)
Rimon P.C.
One Embarcadero Center, Ste 400
San Francisco, CA 94111

Stewart K. Schmella
McCormick, Lanza & McNeel, LLP
4950 Bissonnet
Bellaire, Texas 77401

Counsel for San Mateo County Harbor
District
Hanson Bridgett LLP
Emily M. Charley
425 Market Street, 26th Floor
San Francisco, CA 94105

Body Glove International, LLC
504 N Broadway
Redondo Beach, CA 90277

State Board of Equalization
PO Box 942879
Sacramento CA 94279-0055

Cartel Management & Titans of Mavericks
Consolidated Schedule G

California Coastal Commission
45 Fremont Street
#2000
San Francisco, CA 94105

Coastside Properties
Coastside Self-Storage
110 Stanford Ave.
Half Moon Bay, CA 94019

Cube Smart
198 W Artesia Blvd.
Long Beach, CA 90805

Dept. of Homeland Security
U.S Coast Guard
1900 Half Street S.W. 10-1637
Washington, DC 20593

Fox Sports 1, LLC
10201 W. Pico Blvd. Bldg 103
Los Angeles, CA 90064

Mavericks Invitational, Inc.
25 Johnson Pier
Half Moon Bay, CA 94019

Red Bull Media House North America,
Inc.
1740 Stewart Street
Santa Monica, CA 90404

San Mateo Harbor District
400 Oyster Point Blvd, #300
South San Francisco, CA 94080

U.S. Dept. of Commerce
Monterey Bay
99 Pacific Street, Building 455A
Monterey, CA 93940

California State Lands Commission
100 Howe Avenue
Suite 100
Sacramento, CA 95825

National Oceanic and Atmospheric
Administration
1305 East-West Highway, 11th Floor
Silver Spring, MD 20910

San Mateo County
Dept. of Public Works
555 County Center, 5th Floor
Redwood City, CA 94063

San Mateo County Parks
455 County Center, 4th Floor
Redwood City, CA 94063

State of California
Dept. of California Highway Patrol
355 Convention Way
Redwood City, CA 94063

State of California
Dept. of Transportation
1120 N Street
Sacramento, CA 95814

U.S. Dept. of Homeland Security
U.S. Coast Guard
1 Yerba Buena Road, Bldg. 22
San Francisco, CA 94130

Coastside Properties, LLC
P.O. Box 371357
Montara, CA 94037

Coastside Properties, LLC
Jennifer Souza
241 Yale Ave #C
Half Moon Bay, CA 94019

California State Lands Commission
Attn: Brian Bugsch
100 Howe Avenue, Suite 100-South
Sacramento, CA 95825-8202

San Mateo County Harbor District
504 Avenue Alhambra
El Granada, CA 94018