1  DAVID L. NEALE (SBN 141225)
   KRIKOR J. MESHEFEJIAN (SBN 255030)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
4  Email: dln@lnbyb.com; kjm@lnbyb.com

5  Attorneys for Chapter 11 Debtor and Debtor in Possession

6

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11

12 | In re:                        | Lead Case No. 2:17-bk-11179-DS

13 | CARTEL MANAGEMENT, INC.        | Jointly administered with:

14 |            Debtor.            | Case No. 2:17-bk-11181-DS
   |                               | (Titans of Mavericks, LLC)

15

16 | In re:                        | Chapter 11

17 | TITANS OF MAVERICKS, LLC,

18 |            Debtor.            | **DEBTORS' STATUS REPORT DATED
                                    MAY 31, 2017; DECLARATION OF
19 | ☒  Affects All Debtors          GRIFFIN GUESS IN SUPPORT THEREOF**

20 | ☐ Affects Cartel Management, Inc. only

21 |                               | **Status Conference Schedule:**
   |                               | Date:  June 7, 2017
   | ☐  Affects Titans of Mavericks, | Time:  2:00 p.m.
22 | LLC only                       | Place:  Courtroom 1639
23 |                               |           255 East Temple Street
   |                               |           Los Angeles, CA 90012
24

25

26

27

28

1

Cartel Management, Inc. ("CMI") and Titans of Mavericks, LLC ("Titans", and collectively with CMI, the "Debtors"), Chapter 11 debtors and debtors in possession in the above-entitled Chapter 11 bankruptcy cases file this Status Report Dated May 31, 2017, pursuant to the Court's "Order Scheduling Chapter 11 Status Conference" [Docket No. 9].   The Debtors incorporate herein by this reference the information set forth in the *Debtors' Status Report Dated March 1, 2017* (the "First Status Report") [Docket No. 39].   This Status Report provides information regarding case events since the First Status Report was filed on March 1, 2017.

**A.**     **Status Of Sale Of Debtors' Assets Related To "Titans Of Mavericks" And Prospects For An Alternative Transaction.**

The Debtors were forced to file for bankruptcy protection in order to obtain a breathing spell and hope to conduct either a sale of their business and/or assets, or internally restructure their financial affairs with an infusion of new equity.   The Debtors determined to schedule an auction of their assets in order to motivate interested buyers to bid aggressively to allow the Debtors to obtain the highest and best value for such assets.

In furtherance of the Debtors' efforts, the Debtors' principal contacted marquee parties in the following five sectors:   television network groups, media and internet companies, brand and product corporations, high net-worth individuals, and professional sports leagues and teams.   In total, the Debtors reached out to hundreds of parties and had direct communications with approximately seventy parties.   The Debtors created a substantive data room from which prospectively interested buyers can obtain extensive financial data and other information about the Debtors' assets.   Approximately 14 buyers signed confidentiality agreements and were provided with access to the data room.  The opportunity to acquire the Debtors' assets was widely broadcast.

On May 3, 2017, the Debtors filed that certain *Debtors' Motion For Entry Of An Order: (1) Approving Auction Sale Format And Bidding Procedures; (2) Approving Form Of Notice To Be Provided To Prospective Buyers; (3) Approving Form Of Asset Purchase Agreement For Prospective Overbidders To Use; And (4) Scheduling A Hearing For The Court To Consider*

*Approval Of The Debtors' Asset Sale To The Highest And Best Bidder* (the "Bid Procedures

Motion").  On May 11, 2017, the Bankruptcy Court entered an order (the "Bid Procedures

Order") granting the Bid Procedures Motion.

On May 17, 2017, the Debtors filed that certain *Debtors' Motion For Entry Of An Order:*
*(1) Approving Sale Of Substantially All Of The Debtors' Assets Related To "Titans Of*
*Mavericks" Free And Clear Of All Liens, Claims And Interests; (2) Approving Debtors'*
*Assumption And Assignment Of Unexpired Leases And Executory Contracts And Determining*
*Cure Amounts; (3) Approving Debtors' Rejection Of Unexpired Leases And Executory Contracts*
*Which Are Not Assumed And Assigned; (4) Waiving The 14-Day Stay Periods Set Forth In*
*Bankruptcy Rules 6004(h) And 6006(d); And (5) Granting Related Relief* (the "Sale Motion").

Pursuant to the Bid Procedures Order, the deadline to submit a bid was May 25, 2017 and
an auction was scheduled to be conducted on June 1, 2017.  Four parties expressed an interest in
submitting a bid to the Debtors and participating in an auction.  None of those parties submitted a
qualified bid under the Bid Procedures Order, but one of the parties has proposed an alternative
transaction involving a potential recapitalization of the Debtors as opposed to an asset sale.  In
light of this proposal, which the Debtors believe will address the sale objection filed by the San
Mateo County Harbor District, the Debtors determined to vacate the auction and proceed with
negotiations involving an alternative transaction.  As a result, the Debtors will not be conducting
an auction on June 1, 2017 and the Debtors will be withdrawing the Sale Motion without
prejudice.  Additionally, two of the four parties have continued to express an interest in
submitting a bid for the purchase of the Debtors' assets related to "Titans of Mavericks" and the
Debtors are expecting at least one and possibly both of those parties to submit an offer involving
an asset sale.  The Debtors will consider all offers before determining which offer or offers to
present to the Court for approval.

**B.    Interference With The Debtors' Bankruptcy Cases And Sale Efforts.**

The Debtors believe that two parties have interfered with the Debtors' bankruptcy cases
and sale efforts.

The Debtors believe that Mavericks Invitational, Inc. ("MII") has interfered with the Debtors' bankruptcy cases and sale efforts, including by filing a frivolous claim against CMI. On April 28, 2017, MII filed a proof of claim in CMI's bankruptcy case. MII has not filed a proof of claim in Titans' bankruptcy case. MII asserts various frivolous claims in its proof of claim, including the frivolous claim that MII "owns the surf event." However, MII purposefully failed to disclose the actual agreements between CMI and MII, including the actual, final version of the parties' Intellectual Property License Agreement, and importantly, the Amendment To Intellectual Property License Agreement (the "Amendment"). The Amendment is a critical reason why MII is not entitled to any claims against CMI, and the Amendment is not even mentioned in the proof of claim filed by MII.

The Amendment provides an acknowledgment by MII that MII "had not, prior to the execution of the Agreement, sought nor obtained trademarks, service marks, copyrights, patents, or other intellectual property rights protection for the Intellectual Property that is the subject of the Agreement ('Existing Property' as defined herein). *See* Amendment, Recital C.

The Amendment also provides that MII "acknowledges and agrees that Cartel is, and shall be, *the sole owner of any and all right, title, and interest in and to the name 'Titans of Mavericks,' and all modifications to and derivative works thereof, including without limitation all trademarks, copyrights, patents, and other intellectual property rights therein* together with the right to register, renew or extend such registration and the right to sue in the name of Cartel or in Mavericks' name, if procedurally required, for past, present, or future infringements of such trademarks, copyrights, patents, and other intellectual property rights in and to the name 'Titans of Mavericks.'"

MII failed to disclose or acknowledge the Amendment in its proof of claim. MII also failed to disclose that the event permit was issued solely to CMI, not MII. Instead, MII filed a frivolous claim based on an unsigned version of the Agreement, without any acknowledgement of the Amendment which provided that CMI is the sole owner of intellectual property in and to the name "Titans of Mavericks" which is the name and the brand under which the surf event was

hosted by the Debtors and under which the surf event exists.

At least one interested party indicated to the Debtors that it was unwilling to make a qualified bid to purchase the Debtors' assets related to "Titans of Mavericks" because of the "cloud" on title created by MII and because of the perceived difficulty in dealing with MII after a sale, even a sale free and clear of all liens, claims and interests. The Debtors intend to bring an objection to MII's claim and reserve their right to assert claims against MII.

The Debtors also believe that the San Mateo County Harbor District has potentially interfered with the Debtors' sale efforts. First, the Harbor District filed an objection to the Debtor's sale motion, wherein the Harbor District has claimed that the event permit may not be transferred without the consent of the Harbor District, when that is not the state of the law and when the Bankruptcy Code permits the transfer of the permit irrespective of provisions in the permit purportedly restricting the transfer of the permit. In any event, the alternative transaction being explored by the Debtors, which would involve the recapitalization of the Debtors and continued operations, if consummated, would render the Harbor District's sale objection moot, since under a recapitalization the event permit would continue to be owned by CMI.

Second, a commissioner of the Harbor District– Sabrina Brennan – engaged in what the Debtors perceive to be an illegitimate and untruthful smear campaign of the Debtors, the Debtors' principal, and the Debtors' sale efforts. This campaign includes various social media posts and statements to the press wherein the commissioner, purportedly acting in her capacity as an official of the Harbor District, untruthfully suggested that the Debtors do not have any assets, the Debtors "do not have the required permits," and buyers should "beware." *See, e.g.*, https://www.facebook.com/pg/VoteSabrina/posts.

The Debtors are concerned that such misstatements to the public, particularly coming from someone under the color of authority without any legitimate reason or explanation,[1] interfered with the Debtors' sale efforts.

---

[1] The Debtors inquired of counsel for the Harbor District whether Ms. Brennan's comments reflect the official position of the Harbor District, or are being made in her capacity as a private citizen. The Harbor District has responded by stating that "the Harbor District has a governing

C.      <u>The Debtors' Operations</u>.

The Debtors believe they have sufficient cash on hand to continue to work toward engaging in a transaction to monetize the Debtors' assets.  The Debtors' current operations are limited to the costs of marketing, production, and other related services to preserve the Debtors' business prospects and opportunities for prospective buyers and investors, the costs of administering the Debtors' bankruptcy cases (such as paying the quarterly fees of the United States Trustee, and paying staff to assist the Debtors with their reporting and other compliance requirements), the costs of preserving the Debtors' permits and other contracts (the Debtors are generally current with their permit costs), the costs of maintaining insurance (the Debtors are current), and the costs of storage and preservation of the hard assets of the Debtors (such as event materials, apparel, two watercraft, and office equipment).  During the time period within which the Debtors hope to enter into a transaction, the Debtors expect to receive revenue from the sale of apparel.  The Debtors anticipate some marketing costs associated with the sale of apparel.  Additionally, CMI may be engaged in miscellaneous projects which may generate some revenue for CMI.  The primary expenses the Debtors expect to incur are in connection with negotiating, documenting, and closing a monetizing transaction.

D.      <u>Other Case Matters</u>.

Since the Debtors' filed the First Status Report, the Debtors have: (1) obtained an order extending the deadline for the Debtors to assume any nonresidential real property leases; (2) obtained an order extending their exclusivity periods for filing a plan and obtaining acceptances; and (3) negotiated a settlement agreement with Body Glove, Inc. and filed a motion for an order approving that settlement agreement.

---

board of five members, and no one member can act alone on behalf of the Harbor District.  The Harbor District filed an objection yesterday, served on your office, that outlines its position.  The posts you have sent are from Ms. Brennan's personal social media account."  Unfortunately, Ms. Brennan has not actively clarified that her statements are her own personal views that are not shared by the Harbor District, other than a posting on Facebook discretely indicating on her Facebook page that "[t]he views expressed on this Facebook page do not represent the San Mateo County Harbor District Board of Commissioners[,]" and the Harbor District has taken no action known to the Debtors to publicly dispel any suggestion or notion that Ms. Brennan is acting in her capacity as commissioner.

**E.      The Debtors' Compliance With Their Duties.**

Since the bankruptcy filings, the Debtors and their principal have worked around the clock to ensure that the Debtors' are in compliance with their duties and obligations.  The Debtors believe that they are current with their monthly operating reports, the payment of quarterly fees, and all other administrative compliance items.  The Debtors timely filed their Schedules of Assets and Liabilities, Statement of Financial Affairs, and other required documents, on February 28, 2017.  The Debtors also attended their respective initial debtor interviews, and attended and completed their respective meetings of creditors under 11 U.S.C. § 341(a).

**F.      Proposed Deadlines For Filing Claims, Objections To Disputed Claims.**

The deadline to file proofs of claim in these cases has expired.  The Debtors do not believe it is appropriate to establish a deadline to file claim objections at this time.  Instead, the Debtors propose that their time and resources are better spent attempting to negotiate and close a transaction or transactions in these cases.

**G.      Issues Related To Assumption, Assignment and Rejection Of Unexpired Leases And Executory Contracts.**

The Debtors' leases and contracts are listed in the Debtors' Schedules of Assets and Liabilities (*see* Schedule B and Schedule G).  The Debtors believe that any party interested in a transaction with the Debtors will want to review all of the Debtors' contracts and leases and determine whether to obtain an assignment of such contracts and leases.  The Debtors do not believe it would be prudent to assume or reject any of its contracts or leases prior to first determining the transaction which will dictate the ultimate outcome of these cases.

///

///

///

///

///

///

**H.**     **A Proposed Deadline For The Filing Of A Disclosure Statement And Plan.**

The Debtors believe that it is premature to set a deadline for filing a disclosure statement and a plan at this time, when the Debtors just obtained an extension of the exclusivity periods for filing a plan and disclosure statement, and before the Debtors have negotiated, obtained Court approval of, and closed a transaction in these cases.

Dated: May 31, 2017                     CARTEL MANAGEMENT, INC.; TITANS OF
                                        MAVERICKS, LLC

                                        By: _____*/s/ Krikor J. Meshefejian*_____
                                              DAVID L. NEALE
                                              KRIKOR J. MESHEFEJIAN
                                        LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
                                        Attorneys for Chapter 11 Debtors and Debtors in
                                        Possession

## DECLARATION OF GRIFFIN GUESS

I, Griffin Guess, hereby declare as follows:

1.    I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.    I am the President, sole member of the Board of Directors, and authorized representative of Cartel Management, Inc. ("CMI"), and I am the sole member and managing member of Titans of Mavericks, LLC ("Titans" and collectively with CMI, the "Debtors").

3.    The Debtors were forced to file for bankruptcy protection in order to obtain a breathing spell and hope to conduct either a sale of their business and/or assets, or internally restructure their financial affairs with an infusion of new equity.  The Debtors determined to schedule an auction of their assets in order to motivate interested buyers to bid aggressively to allow the Debtors to obtain the highest and best value for such assets.

4.    In furtherance of the Debtors' efforts, I contacted marquee parties in the following five sectors:  television network groups, media and internet companies, brand and product corporations, high net-worth individuals, and professional sports leagues and teams.  In total, I reached out to hundreds of parties and had direct communications with approximately seventy parties.  I caused to be created a substantive data room from which prospectively interested buyers can obtain extensive financial data and other information about the Debtors' assets. Approximately 14 buyers signed confidentiality agreements and were provided with access to the data room.  The opportunity to acquire the Debtors' assets was widely broadcast.

5.    Pursuant to the Bid Procedures Order, the deadline to submit a bid was May 25, 2017 and an auction was scheduled to be conducted on June 1, 2017.  Four parties expressed an interest in submitting a bid to the Debtors and participating in an auction.  None of those parties submitted a qualified bid under the Bid Procedures Order, but one of the parties has proposed an alternative transaction involving a potential recapitalization of the Debtors as opposed to an asset sale.  In light of this proposal, which I understand will address the sale objection filed by the San Mateo County Harbor District, the Debtors determined to vacate the auction and proceed with

negotiations involving an alternative transaction.  As a result, the Debtors will not be conducting an auction on June 1, 2017 and the Debtors will be withdrawing the Sale Motion without prejudice.  Additionally, two of the four parties have continued to express an interest in submitting a bid for the purchase of the Debtors' assets related to "Titans of Mavericks" and the Debtors are expecting at least one and possibly both of those parties to submit an offer involving an asset sale.  The Debtors will consider all offers before determining which offer or offers to present to the Court for approval.

6.    I believe that two parties have interfered with the Debtors' bankruptcy cases and sale efforts.

7.    I believe that Mavericks Invitational, Inc. ("MII") has interfered with the Debtors' bankruptcy cases and sale efforts, including by filing a frivolous claim against CMI.  I understand that on April 28, 2017, MII filed a proof of claim in CMI's bankruptcy case.  I understand that MII has not filed a proof of claim in Titans' bankruptcy case.  MII asserts various frivolous claims in its proof of claim, including the frivolous claim that MII "owns the surf event." However, MII purposefully failed to disclose the actual agreements between CMI and MII, including the actual, final version of the parties' Intellectual Property License Agreement, and importantly, the Amendment To Intellectual Property License Agreement (the "Amendment"). The Amendment is a critical reason why MII is not entitled to any claims against CMI, and the Amendment is not even mentioned in the proof of claim filed by MII.

8.    The Amendment provides an acknowledgment by MII that MII "had not, prior to the execution of the Agreement, sought nor obtained trademarks, service marks, copyrights, patents, or other intellectual property rights protection for the Intellectual Property that is the subject of the Agreement ('Existing Property' as defined herein).  *See* Amendment, Recital C.

9.    The Amendment also provides that MII "acknowledges and agrees that Cartel is, and shall be, *the sole owner of any and all right, title, and interest in and to the name 'Titans of Mavericks,' and all modifications to and derivative works thereof, including without limitation all trademarks, copyrights, patents, and other intellectual property rights therein* together with

the right to register, renew or extend such registration and the right to sue in the name of Cartel or in Mavericks' name, if procedurally required, for past, present, or future infringements of such trademarks, copyrights, patents, and other intellectual property rights in and to the name 'Titans of Mavericks.'"

10.    MII failed to disclose or acknowledge the Amendment in its proof of claim.  MII also failed to disclose that the event permit was issued solely to CMI, not MII.  Instead, MII filed a frivolous claim based on an unsigned version of the Agreement, without any acknowledgement of the Amendment which provided that CMI is the sole owner of intellectual property in and to the name "Titans of Mavericks" which is the name and the brand under which the surf event was hosted by the Debtors and under which the surf event exists.

11.    At least one interested party indicated to us that it was unwilling to make a qualified bid to purchase the Debtors' assets related to "Titans of Mavericks" because of the "cloud" on title created by MII and because of the perceived difficulty in dealing with MII after a sale, even a sale free and clear of all liens, claims and interests.  We intend to bring an objection to MII's claim and reserve their right to assert claims against MII.

12.    I also believe that the San Mateo County Harbor District has potentially interfered with the Debtors' sale efforts.  First, the Harbor District filed an objection to the Debtor's sale motion, wherein the Harbor District has claimed that the event permit may not be transferred without the consent of the Harbor District, when I understand that is not the state of the law and when I understand the Bankruptcy Code permits the transfer of the permit irrespective of provisions in the permit purportedly restricting the transfer of the permit.  In any event, the alternative transaction being explored by the Debtors, which would involve the recapitalization of the Debtors and continued operations, if consummated, would render the Harbor District's sale objection moot, since under a recapitalization the event permit would continue to be owned by CMI.

13.    Second, a commissioner of the Harbor District– Sabrina Brennan – engaged in what we perceive to be an illegitimate and untruthful smear campaign of me, the Debtors, and the

Debtors' sale efforts.  This campaign includes various social media posts and statements to the press wherein the commissioner, purportedly acting in her capacity as an official of the Harbor District, untruthfully suggested that the Debtors do not have any assets, the Debtors "do not have the required permits," and buyers should "beware." *See, e.g.*, https://www.facebook.com/pg/VoteSabrina/posts.

14.    I am concerned that such misstatements to the public, particularly coming from someone under the color of authority without any legitimate reason or explanation, interfered with the Debtors' sale efforts.

15.        I believe the Debtors have sufficient cash on hand to continue to work toward engaging in a transaction to monetize the Debtors' assets.  The Debtors' current operations are limited to the costs of marketing, production, and other related services to preserve the Debtors' business prospects and opportunities for prospective buyers and investors, the costs of administering the Debtors' bankruptcy cases (such as paying the quarterly fees of the United States Trustee, and paying staff to assist the Debtors with their reporting and other compliance requirements), the costs of preserving the Debtors' permits and other contracts (the Debtors are generally current with their permit costs), the costs of maintaining insurance (the Debtors are current), and the costs of storage and preservation of the hard assets of the Debtors (such as event materials, apparel, two watercraft, and office equipment).  During the time period within which we hope to enter into a transaction, we expect to receive revenue from the sale of apparel.  We also anticipate some marketing costs associated with the sale of apparel.  Additionally, CMI may be engaged in miscellaneous projects which may generate some revenue for CMI.  The primary expenses we expect to incur are in connection with negotiating, documenting, and closing a monetizing transaction.

16.    Since the Debtors' filed the First Status Report, the Debtors have: (1) obtained an order extending the deadline for the Debtors to assume any nonresidential real property leases; (2) obtained an order extending their exclusivity periods for filing a plan and obtaining acceptances;

and (3) negotiated a settlement agreement with Body Glove, Inc. and filed a motion for an order approving that settlement agreement.

17.    Since the bankruptcy filings, we have worked around the clock to ensure that the Debtors' are in compliance with their duties and obligations.  I believe that the Debtors are current with their monthly operating reports, the payment of quarterly fees, and all other administrative compliance items.  The Debtors timely filed their Schedules of Assets and Liabilities, Statement of Financial Affairs, and other required documents, on February 28, 2017. The Debtors also attended their respective initial debtor interviews, and attended and completed their respective meetings of creditors under 11 U.S.C. § 341(a).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed this 31st day of May, 2017.

DocuSigned by:

930F798B6BC0473...

GRIFFIN GUESS

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTORS' STATUS REPORT DATED MAY 31, 2017; DECLARATION OF GRIFFIN GUESS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 31, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Lynn Brown**     notices@becket-lee.com
- **Emily M Charley**     echarley@hansonbridgett.com, ihaas@hansonbridgett.com
- **Stephen D Finestone**     sfinestone@fhlawllp.com
- **Mary H Haas**     maryhaas@dwt.com, melissastrobel@dwt.com;laxdocket@dwt.com
- **Jeffrey S Kwong**     jsk@lnbyb.com, jsk@ecf.inforuptcy.com
- **Kenneth G Lau**     kenneth.g.lau@usdoj.gov
- **Paul J Laurin**     plaurin@btlaw.com, slmoore@btlaw.com;jboustani@btlaw.com
- **Krikor J Meshefejian**     kjm@lnbrb.com
- **David L. Neale**     dln@lnbyb.com
- **Adam M Satnick**     dmarioni@r2lawgroup.com
- **Stewart K Schmella**     sschmella@lanzalawfirm.com, rbanda@lanzalawfirm.com
- **United States Trustee (LA)**     ustpregion16.la.ecf@usdoj.gov
- **Phillip K Wang**     phillip.wang@rimonlaw.com, david.kline@rimonlaw.com

**2.  SERVED BY UNITED STATES MAIL**: On **May 31, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 31, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

***Served via Attorney Service***
Hon. Deborah J. Saltzman
United States Bankruptcy Court
Edward R. Roybal Federal Building
255 E. Temple Street, Suite 1334
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 31, 2017 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

Cartel Management & Titans of Mavericks
Consolidated 20 Largest, OUST, RSN

Kenneth G Lau
Office of the United States Trustee
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

Zoe Lec Ahn
Ahn Group
4372 Neosho Ave
Los Angeles, CA 90066

Attorneys for Red Bull Media House
Mary H. Haas, Esq., Loring Rose, Esq.
Davis Wright Tremaine LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566

Graham Boles
Vogner Design
2233 Barry Avenue
Los Angeles, CA 90064

Josh Sharply
Cube Services, Inc
4098 S. McCarran Blvd.
Reno, NV 89502

American Express
PO Box 981340
El Paso, TX 79998-1540

Cattos
111 Dubois Street
Santa Cruz, CA 95060

Impact Lighting
70 West Ohio Ave, Suite E
Richmond, CA 94804

Khoury Bookkeeping & Tax
520 N. Brookhurst St. Suite 200
Anaheim, CA 92801

Tyler Patkov
Hartnett Smith & Paetkau
777 Marshall Street
Redwood City, CA 94063

Pacific RV & Boat Storage
PO Box 3637
Santa Cruz, CA 95062

Potato Press - Toran Vansleve
1/20 George St
Southport, QLD 4215
AUSTRALIA

Nikki Brooks
3736 Hilltop Ct.
Soquel, CA 95073

Savannah Shaughnessy
142 Zinfandel Cr
Scotts Valley, CA 95066

Transition Productions
1046 Princeton Dr. #120
Marina Del Rey, CA 90292

Glan Lazoff
San Mateo Harbor District
400 Oyster Point Blvd #300
South San Francisco, CA 94080

Wells Fargo Credit Card Services
P.O. Box 51193
Los Angeles, CA 90051-5493

Toren Vansleve
Potato Press
1/20 George St. Southport, QLD 4215
AUSTRALIA

Beach Byte Processamento de Dados Ltda.
Rua da Concei  o, 188
1001B - Niter i - RJ
BRAZIL

Law Offices of Yuval Rogson
1875 Century Park East Suit 1490
Los Angeles, CA 90067

John Tiedt
Tiedt Hurd
980 Montecito Drive suite 209
Corona, CA 92879-1793

Adam Reiss
FOX Sports Network, LLC
10201 W. Pico Blvd Building 103
Los Angeles, CA 90064

Segler Holdings, LLC.
c/o LLF
4950 Bissonet Street
Long Branch, NJ 07740-1000

Eric Weisman
33 W 60th Street Floor 4
New York, NY 10023

Stewart K. Schmella
McCormick, Lanza & McNeel, LLP
4950 Bissonnet
Bellaire, Texas 77401